## J. B. EMMONS, ADM'R, v. W. OLDHAM.

Where the appellant assigned as error that the Court made a certain order, and also that the Court set said order aside, this Court said, The appellant may select his ground, but he cannot assume opposite positions, ensuring success whatever may be the decision on the controverted point. These assignments neutralize each other, and we leave them without further comment.

The improper joinder of parties is not a ground for dismissal of the suit as to those properly sued. (7 Tex. R. 173.) It may affect the costs, but does not reach the legal sufficiency of the pleadings.

The question being whether a contract to locate and clear out a league of land for the one-half, made in December, 1836, was invalid because in violation of some law in restraint of alienation, the Court said, The decrees of colonization of the State of Coahuila and Texas, No. 16 and No. 190, had been repealed, the first in 1832, and the latter in 1834, and had no force except in relation to contracts and titles made and emanating under their provisions. The restrictions, in these laws, on the alienation of lands, were qualified by the provision in the decree of the 26th March, 1834. But none of these restrictions, with or without the qualification of the law of 1834, can be held as operative after the adoption of the constitution of the Republic. The contract was sustained.

Laches, or the staleness of the demand, must be taken advantage of in the Court below. A general demurrer is not sufficient.

See this case as to the diligence required of a locator; the contract being made in 1836, the certificate issued in 1838, land surveyed in 1841, and the patent obtained in 1847; the locator sued in 1848 for specific performance, and recovered.

In the case of Dobbin v. Bryan, we held that the General Land Office was not practically opened until some time in 1844.

Where there was a contract to locate land and procure a patent, and the locator proved that he caused the patent to be issued and paid the dues and fees, the Court held that the jury might presume that he, and not somebody else, had procured the location and survey to be made.

Where the Court instructed the jury that the most important question for their determination was as to the notice to Emmons, (the suit being on a contract of location, for one-half, Emmons being a subsequent purchaser, and the defence being the general denial, that the contract was void on its face, that the locator had failed in the performance of the condition of his contract, and that the defendant was an innocent purchaser;) if he purchased with notice of the existing equities of Oldham, he bought in trust for Oldham, and is bound to relinquish in his favor, and as they found the facts, they would find for either plaintiff or defendant, it was held there was no error.

Appeal from Denton. This suit was commenced by a petition filed by the appellee, against appellant's intestate and an infant child of one Marcilla Jones, for the specific performance of a contract alleged to have been entered into December 26th, 1836, between appellee and said Marcilla, by the terms of which, in consideration that appellee should " select, locate " and clear out of the office, a league of land to which said " Marcilla is entitled under the laws of colonization," said Marcilla should convey to appellee one-half of said land. Petioner avers a performance of the contract by appellee, and a failure on the part of the said Marcilla, who was then dead, leaving the infant child, made a party defendant, but that she had previous to her death, sold said land to the defendant Calvin B. Emmons, who is averred to have purchased with a full knowledge of the contract between appellee and said Marcilla. Said Calvin having died without service being had upon him, his personal representative, the appellant, was made defendant, who filed special exceptions to the petition, and answered, 1st, a general denial,—2nd, that the contract was void,—3rd, that said appellee failed in performance of the

conditions of said contract on his part,—4th that appellant's intestate had purchased the land from said Marcilla for a valuable consideration, without notice of said appellee's claim. And upon appellant's exception, the suit was dismissed ; but this order, on a subsequent day, was set aside.

The suit was first dismissed as to the infant, then reinstated as to him, and again dismissed, and again reinstated. It appeared that the land was surveyed in 1841, but at whose instance did not appear. The appellant purchased in 1846 ; and the patent was issued in 1847, the appellee paying the dues and fees.

There was a general verdict for the appellee, and a decree of title for one-half of the league and labor, headright of said Marcilla, to appellee, and commissioners appointed to make partition. Motion for a new trial was overruled.

*G. F. Moore*, for appellant. I. Upon the subject presented in the 2nd and 4th assignments of error, it is thought that the various and contradictory rulings of the Court on pages 6th, 8th, 9th and 11th of the record, present glaring irregularities in practice, which, if not calculated to impede and embarrass the appellant in the defence of his cause, yet occasioned an oppressive accumulation of costs finally imposed upon the appellant, as will be seen by the judgment, notwithstanding the suit was dismissed as to said minor, whom appellant was in no manner instrumental in either bringing or retaining in Court. (Johnson v. Davis, 7 Tex. R. 173.)

II. The first assignment of error, presented for consideration, the dismissal under the demurrer, and the subsequent judgment setting aside this dismissal. Although the record does not show, that in express terms the demurrer was overruled, we think the petition having been dismissed upon the demurrer, its subsequent action in reinstating the cause must be regarded as a reversal of its previous decision, and tantamount to a judgment overruling appellant's exception to the petition, the validity of which we are consequently authorized to examine,

in doing which we may also dispose of the 3rd, 5th and 7th assignments of error, so far at least as the same are not brought under review in a subsequent assignment.

The demurrer should have been sustained, because the infant child of said Marcilla Jones was made a party to the suit.

The demurrer should have been sustained because the contract showing upon its face that it was for the conveyance of a part of the land, to which said Marcilla was entitled under the laws of colonization, before it had been granted and the prohibition of the colonization laws against sale by a colonist of his lands before the title issued not (as I can perceive) having been expressly or by necessary implication repealed, was illegal and void. (Hunt's heirs v. Robinson's heirs, 1 Tex. R. 748; Robins' heirs v. Robins' heirs, 3 Tex. R. 496.)

The contract having been executed in 1836, and the survey not having been made until five years afterwards, in 1841, and the patent not obtained until six years later, to-wit, in 1847, about two months less than eleven years, from the date of the contract, all which was shown by the petition and exhibits, there was such gross neglect on the part of the appellee, in the performance of his part of said contract, that it might well be said in the language of the exception, that the petition and exhibits showed no cause of action against appellant or others, on said contract. " The party asking specific execution must " always show that he has acted with fairness and good faith, " and that he has been prompt to perform what was incumbent " on him." (Madison v. Chinn, 3 J. J. Marsh. R. 231.) The petition and exhibits showed such a laches and want of promptness, on the part of the appellee, as to have raised the presumption of an abandonment or rescission of the contract; (Mason v. Chambers, 3 Mon. R. 321;) and where a bill exhibited " a stale demand, a court of equity will refuse to decree, al- " though the defendant does not, by plea or answer, insist on " length of time as a defence." (Chief Justice Bibb, in Barbone v. Witlock, 4 Mon. R. 189; Buck v. Halloway's devisees, 2 J. J. Marsh. R. 167 168; Baker v. Biddle, 1 Baldwin, 394.)

III. The 6th assignment presents for review the action of the Court in overruling the motion for a new trial. To test the correctness of this it is necessary to determine whether the law, and more especially the facts, entitled the appellee to a verdict or judgment.

There being no mutuality in the contract relied upon, but it being optional with the appellee whether he would perform it on his part or not, it was not such a contract as entitled him to a specific performance, but he must seek redress by an action upon the penalty. (Butt v. Bondmant, 7 Mon. R. 423.) To authorize a decree enforcing a contract the agreement should be complete in all its parts, else the parties should be left to their legal rights and remedies. (Madon v. McQueen, 3 Marsh. R. 400; Fowler v. Lewis, 3 Marsh. R. 445; Smallwood v. Hansborough, 1 Wash. R. 290; Parish v. Oldham, 3 J. J. Marsh. R. 546.) It should be equal in all its parts. (Clitherall v. Ogilvie, 1 Desau. R. 250.)

Though the plaintiff may have performed on his part, whether the Court will decree a specific performance against the defendant or not, is a matter resting in its descretion. (See authorities last referred to, and Seymour v. Delaney, 3 Cow. R. 445.)

If time, either expressly or impliedly, is made of the essence of the contract, unless the vendee has complied with its terms within the time, the Court will not decree a specific performance against the vendor. (Scott v. Fields, 7 Ohio, 92.) Although the contract here does not stipulate within what time it should be performed by the appellee, yet there being no penalty imposed upon him for a failure to perform, and the very nature and object of the contract show that it must have been of its essence that unless the appellee performed on his part within a reasonable time, he forfeited his rights. Locating the certificate, (if done by the appellee, which is not proven,) in five years, was not a performance in a reasonable time, and the delay of eleven years in the payment of the government dues was still more unreasonable.

The contract was for the locating the headright which said Marcilla was entitled to as the head of a family, and the strong if not irresistible presumption arises, that the very liberal compensation which she agreed to give the appellee for the then comparatively easy task of selecting vacant land, (within the settlements) and small amount of government dues to be paid for it, was for the purpose of securing herself and family a home. And the spirit of this contract was but poorly fulfilled by the appellee five years afterwards making this location beyond the frontier, where even a Surveyor did not dare stretch his chain beyond the range of his rifle. And it being optional either to abandon the contract if worthless, or to perform it if to his interest, and after having delayed for so considerable a length of time, until there was an entire change in the situation and value of the land, the subsequent performance, six years afterwards, does not entitle him to the more favorable consideration of the Court. (Brashier v. Gratz, 6 Wheat. R. 541; Cordova, Adm'r, v. Smith's Adm'x, 9 Tex. R. 129; Frazier v. Broadnax, 2 Litt. R. 249; McKinley v. Butler, 4 Id. 200.) The Court will not decree a specific performance when from the lapse of time and the change of circumstances, such specific performance would not answer the ends of justice between the parties. (Pratt v. Law & Campbell, 9 Cranch, 456, 494.)

The contract being executory, and ten years having expired without a performance on the part of the appellee, for though the land had been previously located and surveyed, there is nothing in the testimony to show that this was done or proved to be done by him, said Marcilla might well treat the contract as abandoned, and either enter and hold the land or sell to another. And a subsequent performance, unless the previous default had been purged or waived, would not entitle appellee to a specific performance. (Estes v. Browning, 3 Tex. R. 463; Waterman v. Castlebury's Heirs, 8 Id. 441; Frazier v. Broadnax, 2 Litt. R. 249.)

Near ten years having elapsed without the appellee's hav-

ing performed, and he having express notice through his attorney, as well as implied notice by the record of the deed to appellant, that said Marcilla had abandoned and repudiated the contract, he did not manifest such subsequent diligence, either in procuring the patent or bringing his suit, as to entitle him to the relief sought. (Smith's Heirs v. Christmas, 7 Yerger, 565; Watson v. Reid, Russ. & Myl. 236, quoted in Hemming v. Zimmerschite, 4 Tex. R. 166.)

In connection with this point it may be necessary to call the attention of the Court to the testimony, as from the testimony of Judge Everts there might be an implied presumption that our deed was antedated, as the witness's best impression is that it was shown to him in 1847 not signed, though it bears date in 1846. But that he was mistaken is clearly shown from the certificate of the Clerk of the County Court, that the deed was recorded in his office in September, 1846, and the patent was not issued until the 18th of October, 1847, and the petition filed 21st October, 1848.

A specific performance will not be decreed unless the party asking it shows that he has performed the acts which formed the consideration of the alleged undertaking of the other party. (Calson v. Thompson, 2 Wheat. 336, 341.) "When "equity will not decree a specific performance, the jury ought "not to find for the plaintiff in an action for a specific perform-"ance under our system." (Mead v. Randolph, 8 Tex. R. 191.)

In the case at bar the selection and location of the land is of the essence of the contract. See Stevenson and wife v. Dunlap's and Bleight's Heirs, 7 Mon. R. 134, which is a suit for a locator's interest, which was refused, though the facts are more favorable than in the present case, and the appellee's services in performing this part of the contract were more important than the small pecuniary consideration he was to pay.

The statement of facts shows that there was not a scintilla of proof to show that the appellee located, selected, or had the land surveyed, and the first act of the appellee, as shown by

the testimony, manifesting an intention to set up the contract or to carry it into effect, is near ten years after its celebration and five after the survey.

It may perhaps be urged that the possession of the patent is presumptive evidence that the field notes had been in the possession of, and returned to the General Land Office by, the appellee, and that their possession raises the further presumption that the location had been made and survey procured and paid for by him. If so, we would reply that this would be stretching the doctrine of presumptive evidence much beyond its legitimate extent, to establish the most material and essential fact in the cause, and which, if true, was susceptible of being so easily established by direct testimony. Again, the presentation of the original agreement to either the Surveyor or Commissioner by the appellee or his attorney would have enabled either of them to obtain possession of the field notes or patent.

The contract sued upon was for the locating a league certificate, the patent obtained was for a league and labor, and the decree passes to the appellee one-half the land embraced in the patent, though describing it as but one-half of a league.

IV. The 9th assignment presents for consideration the charge of the Court. If the Court had submitted the cause to the jury upon the charge as first given, although but a meagre exposition of the law of the case, appellant's counsel below having failed to ask for other charges, we could have no just grounds of objection. But we think that the 2nd charge given by the Judge was well calculated, and no doubt did divert the attention of the jury from the substantial matter in issue, to an issue which, though raised by one of the answers, was not controverted by testimony, and under the facts of the case was unimportant, and that the jury might reasonably understand the Court, that the question of notice was the only one of moment for their decision, owing to which, no doubt, they returned their verdict for the plaintiff, though there was no testimony before them to prove the performance

by appellee of the condition precedent on his part to locate and select the land.

HEMPHILL, CH. J. This case has been argued with great ability, for the appellant, and it is to be regretted that most of the authorities which he cites in support of his positions, are inaccessible to the Court. We will review only such points in the assignments of error as may be necessary to a decision of the cause. The second and fourth assignments are in diametrical opposition to each other. The former alleges error in setting aside the dismissal of the infant child, and the latter that there was error in permitting the suit as to the infant to be dismissed. Both positions cannot be right. The appellant may select his ground, but he cannot assume opposite positions, ensuring success whatever may be the decision on the controverted point. These assignments neutralize each other, and we leave them without further comment.

The first assignment alleges error in setting aside the judgment dismissing the petition on the demurrer, and reinstating the case upon the docket. Some of the grounds urged in support of this assignment are substantially the same with those involved in the third, fifth and seventh assignments, and they will be considered together.

It is contended that the joinder of the infant child, as a party, was ground of exception, and that the demurrer should therefore have been sustained. The rulings in relation to the admission and dismissal of the infant were quite inconsistent and irregular. If the entries be taken literally, it appears that at the instant of filing the exception the infant had been dismissed. But however that may be, and whether the infant should have been a co-defendant or not, the error of her joinder, if any, was not such as to authorize a dismissal of the petition. The improper joinder of parties is not a ground for dismissal of the suit as to those properly sued. (7 Tex. R. 173.) It may affect the costs, but does not reach the legal sufficiency of the pleadings.

The next ground in support of the demurrer is, that the contract was illegal and void under the laws in force at the time of its execution, and that consequently its specific performance cannot be judicially enforced.   I am not aware of the existence of any law in December, 1836, which would have prohibited the sale of incipient rights or titles to lands or the creation of trusts for the benefit of locators by whose funds and services the lands were to be secured.

The decrees of colonization of the State of Coahuila and Texas, No. 16, and No. 190, had been repealed, the first in 1832, and the latter in 1834, and had no force except in relation to contracts and titles made and emanating under their provisions.   The restrictions, in these laws, on the alienation of lands, were qualified by the provision in the decree of the 26th March, 1834.   But none of these restrictions, with or without the qualification of the law of 1834, can be held as operative after the adoption of the Constitution of the Republic.   By that, headrights were secured to citizens ; and it is manifest that some new land system was to be adopted before these could be established, and the lands under them secured.   The right of property itself, where there is no restriction, gives the power of disposition.   No restriction was subsequently enforced on headrights secured by the Constitution.   Their transfers have been recognized as valid, and purchasers have been allowed for their own benefit to prove and establish the rights of their assignors.   A very large portion of the lands of the country is held under titles emanating on such assignments.   If the transfer of the whole of a headright be valid, and be recognized and enforced by law, the sale of the one-half cannot be void.   We are of opinion that the contract was valid in its origin, and was such as to entitle the plaintiff, on discharge of his obligations, to a decree for specific performance.

It is urged further, that the demand is stale, and that the plaintiff from his laches in carrying out the contract, and in claiming a specific performance, is not entitled to a decree. This defence was not pleaded, and does not appear, in any

shape, to have been brought to the notice of the plaintiff or of the Court below. Had it been set up, the plaintiff might have explained his apparent dilatoriness by facts showing such diligence as was compatible with the circumstances of the case. True, a long period had elapsed between the date of the contract in 1836, and the suit in 1848. But the Land Offices of the country were not opened for any purpose until 1838; and in the case of Dobbin v. Bryan, we held that the General Land Office was not practically opened until some time in 1844. The plaintiff could not be justly charged with delay in procuring the patent until after that period. The certificate was obtained in 1838; the land surveyed in 1841, and in 1846 it appears that an attorney was employed to perfect the title and have partition of the land. The patent was obtained in 1847, and this suit commenced in 1848. Possibly the patent might have been obtained more expeditiously, and reasonable diligence should be enforced. But the embarrassment in perfecting title to lands, especially where they lie remote from the General Land Office, are notorious and should be duly estimated, on a question of diligence in the locator. This land was surveyed in 1841, and although not patented until 1847, it might have been settled and occupied as a home long before that period. No complaint is made of the quality of the land. For aught that appears, Mrs. Jones was satisfied with the selection. She accepted it, and no attempt was made by her to rescind the contract, or to incur any of the charges incident to the title. She attempted its repudiation in 1846, by a sale of the whole of the land to Emmons, but neither she nor her vendee made any effort to procure the patent; and this was subsequently issued at the charges of the plaintiff. She, or her vendee, claims the land thus secured by plaintiff, and we are of opinion that any apparent delay of the plaintiff was not, under the circumstances, of such character as to defeat his right to a decree.

The appellant insists here, that the location and survey were of the essence of the contract, and there being no proof of

the performance of such acts by the plaintiff, he is not entitled to recover. One of the difficulties in this case is, that some of the grounds assumed and urged do not appear to have been suggested below. No charges were asked by the defendant, as to the proof to be introduced by the plaintiff. No intimation as to the deficiency of proof appears, from the record, to have been given. No instructions, in fact, were asked by either party. Some one must have ordered and paid for the location, survey and patent. It is not pretended that these acts were done by the defendant. If they had been, facts so important to the defence would doubtless have been established by proof. These acts were stipulated for by the plaintiff. It is alleged that they were performed by him, and it was proven that the final act, the consummation of title by patent, was done through his agency and at his expense. The jury, from all the facts; there being no evidence to the contrary, might well have presumed that the stipulations of the contract had been discharged by the plaintiff.

The ninth assignment is that the Court erred in its charge to the jury. The charge in substance was, that the parties could lawfully make such contract, and that if the jury believed from the testimony, that the contract was made in good faith, and that the plaintiff did comply with the stipulations on his part, and that Emmons had notice of the contract, they would find for the plaintiff. There is no error certainly in these instructions. But the Court, in addition, charged the jury, that the most important question for their determination was as to the notice to Emmons. If he purchased with notice of the existing equities of Oldham, he bought in trust for Oldham, and is bound to relinquish in his favor, and as they found the facts, they would find for either plaintiff or defendant. This is objected to by appellant, as directing the attention of the jury from the substantial matters in issue, to one comparatively unimportant, and as inducing the jury to believe that the question of notice was the only one of moment for their decision.

---

---

This we believe to be an erroneous deduction, as to the effect of the charge. Juries are presumed to be men of common understanding, who can place a common sense construction upon the language of the Court, in its instructions. They were charged to find several facts, among which was notice. For some reason the Court in a separate and subsequent charge, treated this as the most important fact. The jury had, perhaps, agreed on the other facts, or requested further instructions as to this particular point. It certainly was a most important fact. For although the contract may have been valid, and faithfully executed by the plaintiff, yet he would not have been entitled to recover, had the defendant purchased without a knowledge of his rights. There is nothing in the charge which would lead the jury to consider the other facts as unimportant. It may be inferred from this special charge, that the effect of the notice was the principal point of contest below. We are of opinion that there was no error in the charge of the Court, and that this assignment cannot be maintained.

The land divided should have been described as amounting to a league and labor, and not to a league of land. But as all the lands within the boundaries of the patent are equally divided, there can be no doubt that the plaintiff is entitled to one-half of the league and labor, and not one-half of the league. The description of the boundaries in the patent will govern, and not the amount at which the land is, by mistake, estimated.

There is no error in the judgment, and it is ordered that the same be affirmed.

Judgment affirmed.