Aldo W. GOHLKE et al., Appellants,

v.

W. M. DAVIS, Appellee.

No. 12836.

Court of Civil Appeals of Texas.

San Antonio.

March 30, 1955.

Rehearing Denied May 25, 1955.

Rankin, Kilgore & Cherry, Ramiro B. Martinez, Edinburg, for appellants.

Kelley, Looney, McLean & Littleton, L. C. McLean, Edinburg, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Aldo W. Gohlke and the Veterans' Land Board of the State of Texas, against Louis Raffetto, L. H. Manning and W. M. Davis, in three counts, (1) trespass to try title to Lot 14, Section 233, of the Texas-Mexican Railway Company's Survey of Lands in Hidalgo County, Texas, hereinafter referred to as Lot 14; (2) specific performance of a contract of purchase and sale of the same land; (3) damages. The court, upon motion by defendants Davis and Manning, severed plaintiffs' cause of action against them from that against Louis Raffetto, and placed plaintiffs' cause of action against the defendant Louis Raffetto upon the docket under a new number. The defendant Manning filed a disclaimer and was dismissed from the cause, and the court, after a hearing, found in favor of defendant W. M. Davis and rendered judgment that plaintiffs take nothing. Aldo W. Gohlke and Veterans' Land Board have prosecuted this appeal.

This appeal involves the conflicting rights of two purchasers. Appellee, Davis, as assigner of Manning, claimed to have a contract of purchase of Lot 14, which was prior in point of time to the contract of purchase held by appellants.

The contract of purchase asserted by Davis is evidenced by the two following telegrams:

On May 19, 1953, Manning sent the following telegram to Louis Raffetto:

"Have firm offer of $8,000.00 for land. Half cash. Balance on or before two years. You retain one-fourth royalty, 5% commission paid by seller. Advise about contract of sale.

L. H. Manning, Edinburg, Texas."

On the 21st day of May, 1953, Louis Raffetto sent the following telegram to Manning:

"Will accept offer of $8,000.00, half cash, balance two years or before, ¼ mineral rights.

"Louis Raffetto."

It is apparent that neither of these two telegrams contains any description of the land involved. This deficiency is attempted to be supplied by a letter written by L. H. Manning to Louis Raffetto and received by him, reading as follows:

"February 3, 1953

"Mr. Louis Raffetto
Box 79
Lake Zurich, Illinois

Dear Sir:

"Do you still own 40 acres of land north-west of Edinburg, described as Lot 14, Section 233, Tex-Mex Sub? This tract seems to have been one of many victims of the freeze. I am wondering if you want to sell. The trees would have to be removed before it could be converted to farm land. And this is quite an expensive operation. If interested in selling, believe we could move it for you. Please advise price, terms, possession, and any other related items.

"Yours very truly,

/s/ L. H. Manning

L. H. Manning
For Davis Realty Co.
P. O. Box 366
Edinburg, Texas."

On June 23, 1953, Louis Raffetto and Grace Raffetto, his wife, entered into a contract with Aldo W. Gohlke to sell Lot 14 to him, for the sum of $7,500 cash, which contract was assigned by Gohlke to the Veterans' Land Board of the State of Texas.

Appellants' first contention is that the trial court erred in holding that the two telegrams, when considered in connection with the above letter, constituted a legal, valid and binding contract for the sale of said Lot 14.

Under the provisions of subd. 4 of Article 3995, Vernon's Ann.Civ.Stats., a contract for the sale of real estate to be enforcible in the courts must be in writing, or there must be some written memorandum

thereof. The two telegrams do not describe the land in such a way that it could be identified and therefore they do not show a valid contract for the sale of real estate. Smith v. Griffin, 131 Tex. 509, 116 S.W.2d 1064.

Neither telegram indicates in any way that it relates to the land described in the letter of February 3, 1953. There is nothing to indicate in what State or what county the land is located or to whom the land belongs. So far as these two telegrams are concerned, the land might just as well be located in Illinois, where Raffetto lived, as in Hidalgo County, Texas, or in any other State of the Union. They do not even describe the land as your land. More than three months had elapsed between the writing of the letter and the sending of the telegrams. The fact that later Raffetto executed a deed to Davis to Lot 14 does not supply the failure of the telegrams to describe the land or to refer to any other instrument where the description could be found.

Justice Taylor in speaking for the Supreme Court of this State, in Burrows v. Seale, 148 Tex. 411, 225 S.W.2d 966, 968, had this to say:

"Writ of error was granted under the tentative view that the Court of Civil Appeals erred in holding that the description contained in the abstract mentioned in the written contract for the sale of the land, can be used to cure the insufficient description contained in the written contract; and in further holding that the contract, as so cured, can be specifically enforced in the face of an appropriate defensive plea of the statute of frauds. We adhere, upon final consideration, to our tentative view.

"It will be observed that the language employed by the parties for descriptive purposes in the alleged contract is '171 acres of land out of the M. Calvillo Grant No. 22, Wilson County, Texas' (obviously an inadequate description on its face) plus a reference in the contract to a description carried in 'an ab-

stract' of title showing good and marketable title in vendor. This reference, respondent contends, is such as to make the insufficient descriptive language just quoted adequate to meet the requirements of the statute, by consideration of the description in the abstract along with the quoted description.

"In adhering to our tentative view we do not hold that an abstract description properly referred to in the written contract can never be used in a suit of this kind, to supplement the contract description. If the contract sufficiently identifies the abstract referred to—as for instance, one bearing a specified number and prepared by a named abstract company, its descriptive language could be used as supplemental to that of the written contract.

"In the present case, however, the language of the written contract describing the abstract, contains statements which, when taken with the above quoted description contained in the written contract, imports an element of uncertainty as to what abstract is referred to. It is not clear whether it is to an abstract presently in existence 'showing good and marketable title in the vendor,' or one that, in event of a stated contingency, will be made to show such title in the vendor. . . . .

"It would require parol evidence in the present case to show with reasonable certainty that a particular abstract was in existence and was delivered, and would require such evidence to identify it and show that the delivery was referable to the transaction between the parties and was the abstract upon the basis of which they dealt. It is undisputed that Grant No. 21 contains 4420 acres and that Grant No. 22 in the same county (Wilson) contains 177 acres. The parties stipulated on the trial that the abstract to be furnished by petitioner to respondent for the sale of 171 acres of land contained a correct description of the land and that it was the same 171 acres described in respond-

ent's petition; but made the stipulation subject to petitioner's objection that parol evidence was inadmissible to show it was the same.

"The opinion of the Court of Civil Appeals points out parenthetically that there was in fact 'an abstract' in existence; but the opinion disregards the fact that the abstract mentioned was not designated in the signed agreement with such clearness as would reasonably identify it. Briefly stated, respondent, by parol evidence in attempting to make out his case for enforcing specific performance, ties an abstract description of the property agreed to be conveyed, into the descriptive language of the written contract in such a way as to make parol evidence the framework or skeleton of the agreement to convey.

"This is not permissible under the established law." (Citing many authorities.)

██ In that case the alleged written contract did refer to the description of the land contained in "an abstract" and the grantor in furtherance of the contract did furnish to grantee "an abstract" containing a correct description of the land, but the Supreme Court held that this could not be used to cure the insufficient description of the land contained in the alleged written contract. The two telegrams in the case at bar do not even mention a letter, and by no stretch of the imagination could it be said that they refer to any letter for a description of the land. The telegrams do not describe the land in such a way that it can be identified with reasonable certainty, and therefore, under the provisions of the Statute of Frauds, Art. 3995, subd. 4, Vernon's Ann. Civ.Stats., they are void as a written contract or memorandum. Smith v. Griffin, 131 Tex. 509, 116 S.W.2d 1064; Burris v. Hastert, Tex.Civ.App., 191 S.W.2d 811; Lyon v. Harmon, Tex.Civ.App., 212 S.W.2d 491. In 20 Tex.Jur. 311, § 103, it is stated: "The writing must furnish in itself, or by reference to some writing, the means or data by which the particular land to be conveyed

can be identified.". Osborne v. Moore, 112 Tex. 361, 247 S.W. 498.

■ Appellee contends that appellants were not in a position to and could not plead the Statute of Frauds, Art. 3995, subd. 4, in order to defeat the alleged contract between Louis Raffetto and L. H. Manning, as appellants were strangers to this alleged contract. We overrule this contention. Appellants had a valid executory contract of purchase and sale of Lot 14 with Louis Raffetto, and, thus being privies of Raffetto, they could plead any defense to the alleged prior contract which would have been available to Raffetto. Wells v. W. T. Carter & Bro., Tex.Civ.App., 78 S.W.2d 678, reversed on other grounds Tex.Com.App., 106 S.W.2d 1050, 115 A.L.R. 1293; Bacon v. Nelson, Tex.Civ.App., 81 S.W.2d 287; Caltrider v. Caples, 160 Md. 392, 153 A. 445, 87 A.L.R. 1505 and 1521.

■ It is true that Louis Raffetto conveyed Lot 14 to W. M. Davis, who purported to be the assignee of Manning. It is also true that Davis had full knowledge of the executory contract of sale and purchase of Lot 14 existing between Raffetto and Aldo W. Gohlke at the time he received his deed. It is well-settled law that a vendee who purchases property with notice that the vendor has already entered into a contract to convey the property to another can be compelled to specifically perform such prior contract by conveying the property to the vendee in such contract. 38 Tex.Jur., Specific Performance, p. 739, § 62; Emmons v. Oldham, 12 Tex. 18, 19; Scarborough v. Arrant, 25 Tex. 129; Sonnenberg v. Hajek, Tex.Civ.App., 233 S.W. 563; Langley v. Norris, Tex.Civ.App., 167 S.W.2d 603, affirmed 141 Tex. 405, 173 S.W.2d 454, 148 A.L.R. 555. In 49 Am.Jur. 171, Specific Performance, § 148, it is stated:

"It is well settled that one who takes a deed of land with knowledge of an outstanding contract or title takes it subject to such contract or title, and the person who purchases property with notice of a prior agreement by the vendor to convey to annother person is regarded as the trustee of the latter. Therefore, one purchasing property with notice that the grantor has contracted to convey it to another may be compelled to perform the contract in the same manner and to the same extent as his grantor would have been liable to do had he not transferred the legal title."

■ It is true that the purchase contract between Raffetto and Gohlke did not provide for any minerals being retained by Raffetto, except ½ of the usual ⅛ royalty nonparticipating. The property was subject to an oil and gas lease to the Heep Oil Company, which the company refused to release. However, both appellants testified that they were willing to take such title as appellee was able to convey, without any abatement of the purchase price. Under such circumstances, appellants were entitled to specific performance. Jones v. English, Tex.Civ. App., 268 S.W.2d 686, affirmed by the Supreme Court in English v. Jones, Sup., 274 S.W.2d 666.

Appellee contends that there is a lack of mutuality of obligation between appellants and appellee under the purchase contract between Raffetto and Gohlke. We definitely decided this contention against appellees in the recent case of Jones v. English, Tex. Civ.App., 268 S.W.2d 686, in which we were affirmed by the Supreme Court in English v. Jones, Sup., 274 S.W.2d 666.

The judgment of the trial court will be reversed and judgment here rendered requiring appellee to convey Lot 14 to appellants, in keeping with the provisions of the contract of purchase and sale found by us to exist between Louis Raffetto and Aldo W. Gohlke.

Reversed and rendered.