**HUME v. BOGLE.    (No. 5871.)**

(Court of Civil Appeals of Texas. Austin. March 6, 1918. Rehearing Denied May 22, 1918.)

1. SPECIFIC PERFORMANCE ☞31—UNEXECUTED CONTRACTS.

If a contract, because material terms were left for future adjustment, was uncompleted, it was in law no contract at all, and could not be specifically enforced.

2. SPECIFIC PERFORMANCE ☞31—LAND CONTRACTS—MATERIAL PARTS.

The rate of interest and time of payment are material parts of contract to convey land, so that, where such items are left to future adjustment, the contract is not completed, so as to be specifically enforced.

3. CONTRACTS ☞47—RIGHT TO COMMISSION—MAKING OF CONTRACT—CONSIDERATION.

The breach of the principal's oral promise without consideration to the broker to complete a contract whereby broker lost commissions from other contracting party did not entitle the broker to damages.

4. CONTRACTS ☞81—RIGHT TO COMMISSION—MAKING OF CONTRACT—CONSIDERATION.

Where broker without principal's knowledge acted for the other party, her waiver of commission, if the principal would make a certain contract, was no consideration for his promise to make it, since she was not entitled to any commission from the principal.

5. BROKERS ☞40—RIGHT TO COMMISSION—MAKING OF CONTRACT—CONSIDERATION.

Where the principal, ignorant of fact that broker was acting for other party, refused to complete deal, but on broker's promise to look to other for commission agreed to make the contract, whatever the broker thereafter did was as the agent for the other, and not for the principal.

6. BROKERS ☞45 — RIGHT TO COMMISSION—MAKING OF CONTRACT—CONSIDERATION.

Where broker was entitled to commission only when she had found an exchange to which the principal could and did agree, the principal owed her nothing, where she renounced her claim and agreed to look to the other party at a time when no agreement had been reached.

7. SPECIFIC PERFORMANCE ☞17—RIGHT TO REMEDY—INTEREST IN CONTRACT.

A broker has no such interest in a written contract between the principals as would entitle her to specific performance, even assuming that one principal was entitled to that remedy.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by Mrs. Fannie Bogle against J. W. Hume. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Lyndsay D. Hawkins, of Austin, for appellant. Brooks, Hart & Woodward, of Austin, for appellee.

### Findings of Fact.

JENKINS, J. Appellee is a real estate broker in the city of Austin.

Appellant owned property in the city of Austin, the major portion of which was his homestead. He was desirous of exchanging

the same for a farm in Travis county, being willing to pay the difference, if any, in money or notes. With this understanding he placed his property in the hands of appellee, agreeing to pay her 2½ per cent. commission on the value of his property in the event she found a farm that suited him, and at a price which he was willing to pay. He valued his property at $12,000.

Appellee showed appellant a farm belonging to T. M. Scott, with which appellant expressed himself as pleased. He met Scott in appellee's office to discuss the terms of a trade. Scott asked $25,000 for his farm, and expressed a willingness to take appellant's property at $12,000. Appellee's son, in the presence of all parties, drew the following written contract:

"Austin, Texas, April 25, 1916. ·

"Contract and agreement entered into this day between T. M. Scott and J. W. Hume, both of Travis county, Texas: Whereas, Mr. Hume agrees to buy from Mr. Scott and wife their farm of 245.80 acres located about 7 miles east of Austin and now lived on by Mr. Scott and wife for a consideration of $25,000.00, to be paid for as follows: Mr. Scott agrees to take Mr. Hume's place, 411 West 33d St., including rent house in rear, this city, for $12,000.00 as first pay, and make Mr. Scott vendor's lien notes for $9,000.00, rate of interest to be 7 per cent., the dates of payment to be agreed upon, also the rate of interest will also be agreed upon later, and Mr. Hume agrees to assume one $1,000 note, 6 per cent., due Dec. 1, 1916, and one $1,000 note, 6 per cent., due Dec. 1, 1917, and a $2,000, 8 per cent., due Dec. 1, 1918, Mr. Scott paying interest up to date of this contract on these notes.

"Mr. Scott agrees to give in consideration of this trade 25 head of hogs, farm implements, chickens and turkeys.

"Both parties agree to furnish the other abstracts of title within 30 days from date, abstracts to be down to date and made by Daniel Gracy Abstract Company of this city.

"Possession of both places is to be given 60 days from date of this contract.

"Witness our hands this 25 day of April, 1916."

Appellant refused to sign this contract, and left the room. Appellee followed him into the hall and said:

"Mr. Hume, you know you like this place; you have looked all over the country, according to what you tell me yourself, and if you like the place, why would you let a small difference between you all interfere."

Appellant replied that he was not willing to pay more than $24,000 for the Scott farm. Appellee informed appellant that she expected a commission from Scott, and that, if he would consummate the deal, she would waive the payment of commission by him. He agreed to do so, provided Scott would put in certain stock mentioned in the contract. Appellee returned to her office and discussed the matter with Scott, after which she returned to the hall and informed appellant that Scott would put the stock in the deal as suggested by appellant. Thereupon appellant returned to the office, and both he and Scott signed the contract above set out. Appellant did not know, until so informed by appellee in their conversation in the hall, that she represented Scott, or expected any commission from him.

The note for $2,000 mentioned in the contract as being due "Dec. 1, 1918," was in fact due December 21, 1919, and was secured by a vendor's lien on the Scott farm.

Opinion.

This is a suit to recover damages for the breach of a verbal contract with appellant that he would carry into effect the written contract with Scott set out in the findings of fact supra. Appellee alleged that, had appellant complied with said written contract, she would have been entitled to receive from Scott $950 as commissions on the sale of his land, which she lost by reason of appellant's failure to comply with the terms of said written contract.

Upon the threshold of the case the issue arises: Was there, as a matter of law, any contract between appellant and Scott? If not, appellant is not liable in damages to any one for the breach of the alleged contract.

[1, 2] If the contract, by reason of the material terms thereof being left for future adjustment, was not a completed contract, it was, in law, no contract at all, and could not have been specifically enforced by Scott. Where material terms of a contract are not agreed to, the contract is not completed, and courts will not make contracts for parties by supplying such terms. The rate of interest and the time of payment are material parts of a contract to convey land. 3 Elliott on Contracts, §§ 2292 and 2294. In the instant case the alleged contract is contradictory upon its face as to the rate of interest to be paid on $9,000, for which appellant was to execute his notes, the contract reciting that the rate was to be 7 per cent. and also that "the rate will be agreed upon later." There is no pretense that the written instrument fixed the date when the deferred payments should be made. It expressly states that such date is left open for future negotiation.

[3-5] But, aside from the fact that the instrument referred to does not amount to a contract on the part of appellant to convey his land, neither the allegations of appellee's petition nor the evidence show any valid consideration for the verbal agreement which appellant made with appellee to comply with the terms of the alleged contract with Scott. Waiving her right to demand commission from appellant was not such consideration, for each of two reasons:

First, up to the time of such verbal agreement she was acting in a dual capacity as agent for both appellant and Scott, without the knowledge or consent of appellant. For this reason she was not then entitled to any commission from appellant for anything she had done in his behalf. Evans v. Rockett, 32 Super. Ct. (Pa.) 365 ; Mitchell v. Schreiner,

43 Super. Ct. (Pa.) 633. Appellant did not waive such dual agency. On the contrary, appellee renounced the same, and agreed to look to Scott for her compensation. What she did thereafter was as the agent of Scott, and not of appellant. Keitt v. Gresham, 174 S. W. 884.

[6] In the second place, under her original contract with appellant, she was not entitled to any commission from him unless she found some one with whom he could and did agree as to an exchange of property. No such agreement had been reached at the time she voluntarily renounced her claim for compensation from appellant, and consequently he at that time owed her nothing.

[7] Appellee has no such interest in the written contract between appellant and Scott as would entitle her to specific performance, even if Scott was entitled to such remedy. The alleged contract with Scott is not one which a court would specifically enforce in his behalf. There was no valid consideration for the verbal contract between appellant and appellee.

Holding, as we do, the views expressed in this opinion, it is unnecessary for us to pass upon other points raised by appellant's assignments of error.

For the reasons stated, the judgment of the trial court is reversed, and judgment is here rendered that appellee take nothing by her suit, and that appellant go hence without date and recover his costs in the lower court, as well as upon this appeal.

Reversed and rendered.

