## FABRA et al. v. FABRA.   (No. 6366.)

(Court of Civil Appeals of Texas. San Antonio.   April 14, 1920.)

1. Specific performance ⊚⟹121(4)—Evidence held not to show agreement on terms of oral contract.

Evidence, in support of a counterclaim asking specific performance of an oral contract for conveyance of land, that plaintiff understood payments by defendant were to be rent, while defendants understood them to be partial payments on the purchase price, *held*, not to show that the minds of the parties met on the terms of the contract,.so that it could not be specifically enforced.

2. Specific performance ⊚⟹121(1)—Parol contract must be clearly proved.

The party claiming specific performance of a parol contract for the conveyance of land must establish the contract by full, clear, and satisfactory evidence, which shows its terms free from ambiguity and doubt, and also shows that possession had been taken and improvements made on the faith of the contract.

3. Specific performance ⊚⟹8—Relief rests in sound judicial discretion.

The right to specific performance is not absolute, like the right to recover a legal judgment, but rests in the sound judicial discretion controlled by established principles of equity and exercised on consideration of all the circumstances.

4. Specific performance ⊚⟹47—Improvements under parol contract held not sufficient part performance.

Where possession was taken under a parol contract for the conveyance of land before the purchase price was paid and improvements were made thereon, which, however, exceeded the rental value of the land only by a very small amount, there was no such equity disclosed as would warrant a decree for specific performance.

5. Appeal and error ⊚⟹218(2)—Failure to submit unrequested issue held not error.

Appellant cannot complain of the failure to submit the issue as to the extent by which improvements made by him had increased the value of the land, where he made no request for the submission of such issue and did not object to the issues submitted because they did not require the jury to consider such increase.

Appeal from District Court, Kendall County; R. H. Burney, Judge.

Suit in trespass to try title by Ludwig Fabra against Lassie Lee Fabra and another. Judgment for plaintiff on condition that he pay a specified sum to reimburse defendants for improvements, and defendants appeal. Affirmed.

Geo. R. Gillette and Joe H. H. Graham, both of San Antonio, for appellants.

Boyle, Ezell & Grover, of San Antonio, for appellee.

MOURSUND, J.   We adopt appellee's statement, as follows:

This is a suit in trespass to try title, brought in the district court of Kendall county by Ludwig Fabra, appellee, against Lassie Lee Fabra and Hilmar Fabra, appellants, in which case judgment was rendered, for appellee, plaintiff, in the district court, for the recovery of the real estate sued for. Appellants are husband and wife, and appellee, Ludwig Fabra, is the father of the appellant Hilmar Fabra.

"Appellants filed a plea of not guilty, and further filed a cross-bill alleging that about the time the appellants were married (in the spring of 1914) the said Ludwig Fabra proposed to the said Hilmar Fabra that he would provide for them out of the 38 or 40 acre tract owned by him, the land upon which they could build a home; that thereupon defendant Hilmar Fabra began making arrangements to build, and that he and Ludwig Fabra measured off, set apart and agreed upon for such purpose the land described in plaintiff's petition; and that the said Ludwig Fabra thereupon verbally contracted and agreed with the said Hilmar Fabra that he, Ludwig Fabra, would build the house for defendants, and that he would give said land to said Hilmar Fabra, giving him a deed to said property, as soon as he, Hilmar Fabra, had paid for the improvements; that the said Ludwig Fabra thereupon caused the construction and completion of the original improvements on said property, including a cottage of five rooms, a well and pump, and the fences surrounding said parcel of land, and the said house being then completed, the defendants, with the consent of Ludwig Fabra, and relying upon said verbal contract, entered into possession of said property on or about the date of their marriage, July 10, 1914, and ever since that date they have continuously used and occupied said premises and have made valuable improvements thereon.   Defendants prayed for a specific performance of said contract and asked the court to find what sum or sums may be reasonable and just and in keeping with said contract.

"Appellee, Ludwig Fabra, filed a supplemental petition denying any such contract as set up in the cross-bill, and alleged that he agreed and did build the house described in defendants' answer, at a cost of $1,810, with the understanding that Hilmar Fabra would rent the same from plaintiff and pay a monthly rental equal to the interest on the cost of said improvements, which amounted to $11.50 per month, and Hilmar Fabra paid said rental until the 1st of November, 1917, when he ceased to pay same, and has ever since failed and refused to pay same.

"That at the time said Hilmar Fabra married he was indebted to the Boerne State Bank in the sum of $1,500, and plaintiff told said Hilmar Fabra that if he would proceed in good faith to pay off said indebtedness and pay same off in a reasonable time he, plaintiff, would then sell him said house and the land surrounding same and under fence, with the house at the time it was completed, for said actual cost of the house to him, that is $1,810; and allow him to pay for same in installments to be agreed upon between them when he, Hilmar. Fabra,

had paid the said indebtedness to the bank; that in the fall of 1917, instead of paying off said indebtedness, said Hilmar Fabra had become further indebted and then owed about $6,000, and to save the standing of said Hilmar Fabra in the community, plaintiff paid off said indebtedness and Hilmar Fabra agreed to repay him at the rate of $75 per month; that Hilmar Fabra paid said $75 per month for eleven months, and paid the total sum of $950 upon said indebtedness to plaintiff; that after November, 1917, he paid no rental whatever.

"Upon a trial of the case the court submitted it upon two special issues: First, what was the value of the improvements placed upon the premises by the defendants; and, second, what was the reasonable rental value of the land and premises from November 1, 1917, to the then date (September 12, 1919)? The jury answered as to the value of the improvements placed by defendants to be the sum of $423.25, and the rental value from November 1, 1917, to be $335. The court then entered judgment for the plaintiff for the land in controversy and in favor of the defendants for the sum of $68.25, being the difference between the value of the improvements that they had made, and the amount of rental due by him."

The judgment contains the following recital explanatory of the action of the court in submitting only the two issues above mentioned:

"And it appearing to the court from the pleadings and evidence that the verbal contract set out in defendants' answer and cross-bill for specific performance to show title to the property in controversy in defendants and as a basis for said cross-bill for specific performance, is contrary to the statutes of frauds and the statutes of conveyances, and that no equities have been shown, under and by virtue of which said contract may be established or enforced and that said contract is too vague, uncertain and indefinite in its terms to form the basis for a decree of specific performance or to be specifically enforced and too vague, uncertain and indefinite to form the basis for a claim of title to the property in controversy in this suit, and that the evidence in this case is wholly insufficient to establish the contract sued on in law or equity, the court finds that the title to the land in controversy in this suit is in the plaintiff, Ludwig Fabra."

[1] The evidence shows that Ludwig Fabra agreed to build the house and to convey to Hilmar Fabra a parcel of land on which such house was to be built upon the performance of certain conditions, but there is a conflict in the evidence with respect to what was to be done by Hilmar. Hilmar's version was that he was to pay for the cost of the house, but that nothing was said about when he was to pay for it; that he was to pay for it when he was able, and it was for him to determine whether he was able to pay or not. The house was built and he moved in during July, 1914. Ludwig Fabra testified that Hilmar owed about $1,350 at the bank, and this was to be paid off first, and then the cost of

221 S.W.—64

the house, and upon all of this being done he was to convey the land to Hilmar, and that he was to receive rent sufficient to pay interest on the investment. After Hilmar moved into the house, he began to pay installments of $11.50 each, which he contends were never referred to by his father as payment of rental until in 1915 or 1916, while his father testified Hilmar never claimed that such payments were installments of purchase money until about a year and a half after he occupied the premises. According to Hilmar's testimony, when he made the first payment he told his father he thought he could pay as much as $15 a month, and his father said $11.50 a month would be plenty, and nothing else was said. He does not undertake to state that his father understood that he was undertaking to make an agreement fixing the terms of payment for the house, but always testified to his own understanding. There is not a particle of evidence from which a jury could have found that Ludwig Fabra at that time understood that he was agreeing to give his son over 13 years in which to pay for the cost of the house, and charge no rent or interest, but pay taxes and insurance. We therefore find that there never was any meeting of the minds of the parties, so as to make an agreement concerning when and how Hilmar was to pay the sum, upon payment of which, according to his version, his father would be obligated to deed him the land in controversy. In fact, by his answer and cross-bill Hilmar Fabra recognized this uncertainty, for he alleged that in April, 1919, he had offered to again make payments at the rate of $25, and his father refused to accept the same, and he offered in his pleading to pay "such sum or sums as the court may find reasonable and just and in keeping with said contract."

[2] In the case of Murphy v. Stell, 43 Tex. 123, the court, speaking of parol promises to give or convey land, said:

"The party setting up such promise must be able to establish it by full, clear, and satisfactory evidence. Its terms and conditions must be clear and free from all ambiguity and doubt. It must also appear that possession has been taken, and the improvement made upon the faith of it."

See, also, Shumway v. Kitzman, 28 S. D. 577, 134 N. W. 325; Gates v. Gamble, 53 Mich. 181, 18 N. W. 631. If the contract was as described by Hilmar Fabra, it is so indefinite, incomplete, and unequal that it can find no favor with a court of equity.

[3, 4] The right to specific performance is not absolute, like the right to recover a legal judgment. The granting of the equitable remedy is, in the language ordinarily used, "a matter of discretion, not of an arbitrary, capricious discretion, but of a sound, judicial discretion, controlled by established principles of equity, and exercised upon a consid-

eration of all the circumstances of each particular case." Pomeroy's Equity Jurisprudence (4th Ed.) § 2217; Simpkins on Equity, p. 686. There are no such equities disclosed as would warrant a court of equity in entering a decree for specific performance, if the contract be regarded as sufficiently certain. There was, to say the least, no agreement that Hilmar should pay no interest and no rent, and that his father should pay the taxes and insurance. The parties seem not to have had a meeting of minds on the point whether rent should be paid to cover the items of taxes, insurance, and interest. The father is positive that this was agreed upon while the son says these matters were not mentioned until a year or so after he took possession. Ludwig Fabra paid the taxes and insurance, and his testimony to the effect that he paid for various repairs is not disputed. Hilmar Fabra made improvements up to the time he was ordered not to do so by his father, and the value thereof was found by the jury. The value of the use of the premises for the period during which he failed to pay the sum of $11.50 per month was found by the jury. The difference between them is small, and the court awarded him a recovery for such difference. Had Hilmar paid the purchase money at the time he took possession, he might assert with plausibility that the value of the use of the premises ought not to be considered in determining whether it would be inequitable to refuse specific performance; but, under the facts of this case, such value is proper to be considered, and the balancing of accounts leaves so little to his credit that no court of equity would regard his part performance as sufficient to require, in the interest of justice and to prevent fraud, that it should now permit him to pay the entire sum agreed to be paid by him and be awarded a conveyance. Eason v. Eason, 61 Tex. 225. In order to defeat plaintiff's right to recover the land as the holder of the legal title, it became necesssary for defendants to not only plead but prove such part performance as would entitle them to specific performance of the verbal agreement. The proof disclosed that they were not entitled to specific performance. They did not pray in the alternative that they recover the value of improvements, but the court awarded them such value under their prayer for general relief, less the value of the use of the property, or, finding that plaintiff ought to pay the difference, held that he could not recover without paying such difference. The judgment awards a recovery of the difference and provides that it must be paid before a writ of possession can issue.

[5] We do not think there is any merit in the contention that the issue as to value of use was an immaterial one, nor do we think the judgment should be reversed because of the failure of the court to submit the issue to what extent the improvements made by defendants increased the rental value. No request was made for the submission thereof, nor objection urged to the issue submitted because it did not require the jury to exclude any part of the rental value brought about by reason of such improvements. There was no evidence that such improvements had increased the rental value of the premises.

We conclude that the assignments of error should be overruled, and the judgment affirmed.