### ENGLISH v. UNDERWOOD et al.
### (No. 2147.)

Court of Civil Appeals of Texas.    El Paso.
April 19, 1928.

Rehearing Denied May 10, 1928.

**1. Pleading ☞36(2)—In suit for specific performance and for damages in alternative, court could consider statement in plaintiff's petition as to value of land in determining question of value fluctuation.**

In suit for specific performance and for damages in the alternative, wherein plaintiff alleged he had agreed to pay $1,200 for land, but that it had increased to $50,000 in value on discovery of oil, court could, in considering fluctuating value on question of time being of the essence, consider the plaintiff's own statement made in his petition relative to such fluctuation.

**2. Contracts ☞211—Courts are disinclined to construe stipulations as to time as of essence, unless made necessary by contract's express language or circumstances showing such intention.**

Courts are disinclined to construe stipulations as to time as of essence of the contract, unless compelled to do so by the express language of the contract or circumstances of the case showing such intention.

**3. Contracts ☞212(2)—Where contract does not fix time for performance, legal presumption is parties intended reasonable time.**

Where the contract does not fix a time for its performance, the presumption of law is that the parties intended a reasonable time.

**4. Contracts ☞212(1)—"Reasonable time" for performance of contract depends on circumstances in each case.**

What is a reasonable time for performance of a contract, depends on the circumstances in each particular case; "reasonable time" being such time as is necessary conveniently to do what the contract requires shall be done.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

**5. Specific performance ☞99—In purchaser's suit for specific performance, purchaser's delay of some 20 days in acting on deed and abstract and transmitting notes and draft held to preclude specific performance; reasonable time for performance having elapsed.**

In land purchaser's suit for specific performance, wherein it was shown contract itself did not specifically make time of the essence, but land involved was oil land, the value of which might fluctuate greatly, depending on discovery of oil from drilling operations then in process, purchaser's delay of some 20 days without acting in reference to deed and abstract sent and submitted by vendor, and without remitting notes and drafts according to contract, held to preclude his enforcing specific performance, since reasonable time for performing contract had elapsed.

**6. Specific performance ☞8—Specific performance is not matter of absolute right, but of sound discretion in trial court.**

Specific performance of a contract is not a matter of absolute right but of sound discretion in the trial court.

**7. Specific performance ☞100—Trial court held not to have abused discretion in refusing specific performance of contract to convey land, where value had greatly increased during intended purchaser's delay.**

Trial court held not to have abused its discretion in refusing specific performance to land purchaser, where, due to oil drilling operations, the value of the land had greatly increased during plaintiff's own delay in complying with terms of contract.

Appeal from District Court, Midland County; Chas. L. Klapproth, Judge.

Suit by D. P. English against C. F. Underwood and another. Judgment for defendants, and plaintiff appeals. Affirmed.

John W. Craig and Craig & Van Slyck, all of Dallas, for appellant.

Glenn R. Lewis and Wright & Harris, all of San Angelo, and Nealon, Hudspeth & McGill, of El Paso, for appellees.

WALTHALL, J. Appellant, D. P. English, in his third amended original petition upon which the case was tried, sues C. F. Underwood and J. P. Carter, appellees, first in trespass to try title, second, seeking the cancellation of a certain deed to some 90 acres of land in Winkler county, executed by Underwood to Carter, praying that a decree be made requiring Underwood to carry out and perform a certain alleged agreement with him (English) to execute and deliver to him a deed to said 90 acres of land; that, if for any reason the deed from Underwood to Carter be not

canceled, then that said deed be held in subordination to his (English's) rights as having been taken with actual and constructive knowledge of his rights; that, if for any reason it should be found that specific performance of said agreement to convey said land cannot be granted, in that event, in the alternative, English asks judgment against Underwood for damages by reason of the alleged breach of contract to convey said land, stating his damages; that, should specific performance of said agreement be not enforced, and that Carter bought said land for value, but with notice of his (English's) rights, a lien be fixed against said land to secure him in the amount of his damages.

More specifically stated, appellant alleged that on October 12, 1926, appellee Underwood entered into a contract with him, in writing, by the terms of which he agreed to sell, and appellant agreed to buy, the 90 acres of land in controversy; that in pursuance of said agreement Underwood undertook to execute and deliver a conveyance of said land for the consideration of $1,200, payable one-half in cash, and the balance to be evidenced by promissory notes payable in one and two years; that said agreement as to the sale and purchase of said land was entered into by means of telegrams and letters, copies of which were attached to appellant's petition. Appellant alleged that the correspondence and exchange of telegrams constituting said agreement passed through S. F. Tubbs of Dallas, Tex., who was acting as representative of both appellant and appellee Underwood, and that appellant accepted Underwood's proposition to sell on terms stated, and caused a check for $120 as earnest money to be mailed to Underwood; that Underwood executed a deed to said land, and caused it to be sent to the Mercantile Bank of Dallas to be delivered to appellant, upon the payment of draft attached thereto in the sum of $480, and execution of the two vendor's lien notes; that Underwood cashed the check, and never returned it to appellant, and thereby ratified the said agreement to sell; that appellant was to have 30 days after receiving abstract of title within which to examine it before accepting title and paying draft; he alleges the receipt of the abstract of title showing title in Underwood, alleged diligence in examination of title, and acceptance of deed and honoring draft; alleged in the alternative that, if he was not allowed 30 days to examine title, then he was allowed a reasonable time; that within 30 days from the receipt of the abstract, and within a reasonable time he presented himself at the said bank, and offered to pay said draft, but that prior to that time Underwood, without notice to appellant, had caused said draft and deed to be returned to him, and refused to perform his said agreement to convey said land. He alleges his willingness to carry out his agreement to buy. Appellant alleges that Underwood's deed to

Carter was not for a valuable consideration, and was delivered with full knowledge, actual and constructive, upon Carter's part of appellant's rights in the premises, and with intent to defeat appellant in the purchase of the said land and in fraud of his rights.

Underwood answered by general denial and plea of not guilty. He alleged that time was of the essence of the alleged contract to convey said land; that, at the time the agreement was entered into, there was much prospecting for oil and gas in Winkler county; that without the production of oil and gas $1,200 would have been a fair consideration for the said land; that at said time many contracts for leases, royalties, and drilling wells for oil and gas were being executed in the vicinity of the said land, and the demand for real estate in Winkler county was active; that such was well known to appellant and others dealing in lands in said county; that it was known to all parties concerned that it was within the contemplation and intention of all parties that time should be of the essence of this contract, and that the period should not be extended beyond such time as would be necessary for the preparation of abstracts, the examination thereof, and the tendering of the deed, and that a reasonable time for the closing of the transaction was not more than 10 days; that it was especially within the contemplation of the parties that the deed should remain in the bank to await the outcome of developments for oil in said vicinity, and, notwithstanding the fact that the land in question had fluctuated in value contingent upon the oil development, appellant failed and refused to complete the alleged sale promptly as he could and should have done under existing circumstances, but attempted to hold appellee under the alleged contract of sale awaiting the development of said oil prospecting campaign, with a view to closing same only in the event oil was developed, and thus hindered the consummation of said contract from October 15, 1926, to December 8, 1926, at which time appellee withdrew his conveyance of said land, and refused to be further bound by said contract. Appellee alleged that he tendered the return of the $120 earnest money conditioned upon the return to him of his abstract of title. Appellee specially denied any agency of S. F. Tubbs.

Appellee Carter pleaded general denial and not guilty; that he paid a consideration of $1,500 to Underwood for the land; denied notice, actual and constructive, of any claim or right of any character of appellant to the land.

The case was tried without a jury. Judgment was rendered for appellees.

The court filed findings of fact as follows:

"(1) I find that on or about the 1st day of October, 1926, the defendant C. F. Underwood was the owner of lands and town lots in Winkler

county, Tex., as described in the plaintiff's third amended original petition.

"(2) I find that in the early part of October, 1926, the defendant C. F. Underwood, by letters and telegrams, agreed with one S. F. Tubbs to sell his said holdings in Winkler county, Tex., for a consideration of $1,200, one-half to be paid in cash and the remainder to be evidenced by two vendor's lien notes in the sum of $300, each due at one and two years afterward, to be signed by the purchaser.

"(3) I find that in negotiating said sale the said S. F. Tubbs was acting as the agent and representative of the plaintiff, D. P. English, in the purchase of said land, and that the said D. P. English was the undisclosed principal of the said Tubbs.

"(4) I further find that on or about the 8th day of November, 1927, the defendant Underwood forwarded this deed conveying the said premises to the Mercantile National Bank of Dallas, Tex., with draft attached for the cash consideration, together with vendor's lien notes to be executed by the purchaser, with instructions to deliver said conveyance upon the payment of said draft and the execution of said vendor's lien notes for the balance of the purchase money.

"(5) I further find that there was no agreement between the parties as to any specified time for the consummation of said sale.

"(6) I further find that, at the time of the negotiation of said sale, the said lands and town lots in question had only a nominal value.

"(7) I further find that, at the time of said negotiations, a test well was being drilled in the vicinity of said lands for oil; that said well had reached the depth sufficient at said time to produce a small quantity of oil, and was still in process of drilling; that during said negotiation, and by reason of the progress and development of said well, and the contingent possibility of said well developing into a commercial producer, the lands in question had at said time a very fluctuating and speculative value. I find that said well was the discovery well for oil in Winkler county; that at the time of said negotiations said well was nearing completion; that, if said well had proven to be a nonproducer, the lands in question would have had a nominal value only.

"(8) I further find that, a short time after the date of the negotiations for the sale of said lands, the said well was completed and brought in as a wonderful producer of oil, and that since said time the lands in question have materially enhanced in value.

"(9) I further find that, on account of the fluctuating value of the lands in question, time was materially the essence of the contract in question; and that the plaintiff failed and refused to accept the conveyance of said lands and to pay the cash consideration therefor and to execute the notes for the deferred payment within a reasonable time in the light of all the facts and circumstances surrounding the transaction in question.

"(10) I further find that the defendant Underwood did not agree to furnish a complete abstract of the title to said lands, nor to allow time for the examination of the abstracts."

At the request of appellant, the court made additional findings as follows:

"(a) The court is unable to determine the exact date of the arrival of the draft and deed in question in the city of Dallas, Tex., since no evidence was offered upon this point. However, the court finds that said deed and draft were returned to the Central National Bank at Calexico, Cal., at the request of the defendant Underwood.

"(b) I find that said deed and draft were returned by said Dallas bank to the Central National Bank of Calexico, Cal., on December 8, 1926, at the request of the defendant Underwood, and that the plaintiff, English, called at said Dallas bank on December 9, 1926, and made inquiry as to said deed and draft.

"(c) I find that, at the time of the negotiation in question, a well was drilling at a distance of some four and one-half (4½) miles from the lands in question; that, at the time of said negotiation, no oil was being produced from said lands in paying quantities, but that said well was producing about 25 barrels per day, and thereafter, about the middle of January, 1927, said well reached a sufficient depth to become a valuable producer.

"(d) I find that the defendant Underwood advised a man by the name of Tubbs, with whom he had been negotiating the sale in question, that he had forwarded the deed and draft in question through the Central National Bank, and in this connection I find that there is a Central National Bank in Calexico, Cal., through which said deed and draft was sent, and that there is also a Central National Bank in Dallas, Tex.

"And I further find that the plaintiff, English, made inquiry for the deed and draft in question at the Central National Bank in Dallas, but was unable to locate the same at said bank; but later found same at the Mercantile National Bank in Dallas, Tex., which is the Bank that said Tubbs directed the defendant Underwood to forward the draft and deed in question to."

## Opinion.

The clear and concise statements in the trial court's findings of fact relieve us of copying into the statement of the case the telegrams and letters which form the basis for the trial court's finding that a contract of sale of the land in controversy was entered into between the appellant and appellee, and that finding is not challenged by either side. The findings show that in the early part of October, 1926, C. F. Underwood was the owner of the land involved in this suit, and at that time, by the letters and telegrams shown in the evidence, agreed with S. F. Tubbs, representing the undisclosed principal, D. P. English, to sell the land in controversy for the consideration, and upon the terms, of $1,200, one-half in cash and the remainder to be evidenced by two notes of $300 each, due in one and two years, and that, in pursuance of said agreement, Underwood executed, and about the 8th day of November, 1927 (evidently meaning 1926) forwarded, his deed conveying said land to the Dallas bank, to be delivered upon the payment of the attached draft for the unpaid cash payment, and the execution of the said two notes, and that Tubbs was so

advised; that on the 8th day of December, 1926, at the request of Underwood, the Dallas bank returned the deed to the California bank. We will later note other findings as between appellant and appellee, but at this point we think to consider the disposition made of appellee Carter. No finding of fact was made by the trial court as to appellee Carter, and none requested to be made. The court entered judgment that appellant take nothing as to Carter.

As to Carter, appellant alleged in his third amended original petition that, subsequent to the time of Underwood's alleged breach of agreement to convey the land to him, Underwood conveyed the land to Carter, and alleges that said conveyance is not based upon a consideration deemed valuable in law; that the conveyance was made "with full knowledge, actual and constructive, on the part of Carter of all the appellant's rights in the premises," and for the purpose and intent to defeat appellant's rights, and in fraud of his rights, and that the conveyance to Carter was not a bona fide sale, but simulated and done to prevent the enforcement of specific performance of the sale to him on the part of Underwood, and that, if Carter did pay a consideration, it was with actual and constructive notice of the pendency of this suit.

Carter's original answer is made to appellant's first amended original petition. Additional to his general denial and not guilty, he alleges that he is the owner of the land in controversy; that he bought the land from Underwood prior to the institution of his suit, paying a cash consideration of $1,500, and without notice, actual or constructive, of any claim or right of any character of appellant to the land involved here.

The trial court found that, while there was no agreement between English and Underwood as to any specified time for the consummation of said sale, a test well was being drilled in the vicinity of said lands for oil; that said well had reached the depth sufficient at that time to produce a small quantity of oil, and was still in process of drilling, and that, because of the facts found, the lands in question had a very fluctuating value, and that, a short time after the date of the negotiations for the land, said well was completed, and proved to be a large producer of oil, and that, by reason thereof, the lands in question have materially enhanced in value, and that, because of the fluctuating value of the land, time was materially the essence of the contract, and that appellant did not within a reasonable time, in the light of the circumstances, accept the conveyance and pay the cash consideration and execute the notes for the deferred payment.

Appellant challenges the sufficiency of the evidence to justify the findings that the lands had a fluctuating value, and that time was of the essence of the contract to convey the land.

[1] We have carefully reviewed the evidence, and, without copying it here, have concluded that it was sufficient to present an issue to the trial court for such findings thereon. It is clear that the value of the land was highly speculative. English said that it was a gamble, and that, if it had not been for a chance of that well coming in, he would not have wanted it at any price. Appellant alleges in his amended pleading, filed a few months thereafter, that the land was then worth $50,000. In determining the question of the fluctuating value of the land, we think the court could consider the statement in the petition as to the value of the land at that time in connection with other evidence, facts, and circumstances.

[2] Courts are disinclined to construe stipulations as to time as of essence of the contract, unless compelled to do so by the express language of the contract or circumstances of the case, which shows such intention. Simkins on Contracts, p. 226, and cases there referred to. Judge Simkins said in that connection:

"However, that time is intended as of the essence of the contract may be construed from the circumstances surrounding the making of the contract. Thus, if the thing to be sold is rapidly fluctuating in value, or any other circumstance exists that would make it clearly inequitable to enforce the contract after the specified time mentioned has elapsed, then it will be considered of the essence."

[3, 4] But, where the contract does not fix a time for its performance, as here, the presumption of law is that the parties intended a reasonable time (Emery v. League [Tex. Civ. App.] 72 S. W. 606; Aycock v. Reliance Oil Co. [Tex. Civ. App.] 210 S. W. 848), and what is reasonable time depends on the circumstances in each particular case (Reed v. West, 47 Tex. 249; Campbell v. McFadin, 71 Tex. 28, 9 S. W. 138; 13 C. J. p. 685, note 26). It is there said that as accurate a definition of reasonable time as may be given is that it is such time as is necessary conveniently to do what the contract requires should be done.

[5] The deed, abstract, notes, and draft were in the Dallas bank some 20 days without action in reference thereto by appellant, when they were returned to Underwood at his direction. It would seem that to sign the notes and pay the draft would take but a very small part of that time, and that a reasonable time had been allowed.

[6, 7] Specific performance of the contract is not a matter of absolute right in appellant, but of sound discretion in the trial court. Without stating the evidence, we think it might be fairly said that the circumstances surrounding and leading up to the final transaction resulting in the agreement to sell on the part of Underwood and to buy on the part of English, acting through Tubbs, do not appeal to a court of equity in an effort to indorse specific performance, and we cannot say that the trial court abused his discretion

in refusing specific performance of the contract to convey.

The trial court found that it was not a part of the agreement that Underwood was to furnish a complete abstract of title. In contradiction of this finding, appellant refers to a letter of Underwood to Tubbs of November 5, 1926, in which he writes, in substance, that he had been sick, and could not attend to fixing papers until now; that he was sending deed; that his house had burned and his deeds destroyed, and that Tubbs would have to get them off the records; and that "Mr. Priest has the abstract. I will write him to send it to you."

The terms of Underwood in his proposition to sell and the acceptance of the proposition do not include the furnishing of an abstract. Some of the correspondence, as above, both before and after the consummation of the agreement, refer to the abstract, but, as the trial court evidently viewed it, and as we view it, it was not made a part of the agreement that an abstract should be furnished. However that may be, an abstract was furnished, and the finding seems immaterial.

We have discussed the controlling issues in the case as we view them, and have concluded that the court was not in error in entering judgment for appellees.

The case is affirmed.