JONES et al.   v.   ENGLISH et al.

No. 12625.

Court of Civil Appeals of Texas.

San Antonio.

May 12, 1954.

Rehearing Denied June 9, 1954.

North, Blackmon & White, King & Nesbit, Corpus Christi, for appellants.

Chas. G. Lyman, Corpus Christi, L. Hamilton Lowe, Austin, for appellees.

W. O. MURRAY, Chief Justice.

This cause has been before this Court previously upon procedural questions. See Jones v. English, Tex.Civ.App., 235 S.W.2d 238. It was instituted in the District Court of Nueces County by Dudley Jones against Mrs. Rudolph English, a feme sole, seeking partial specific performance of a certain written sales contract entered into between plaintiff and defendant on or about January 21, 1950, whereby plaintiff agreed to buy and defendant agreed to sell, for a cash consideration of $9,500, the following described real property:

All of Lots 19, 20, 21, 22, 23 and 24 of Block 7 in the Patrick Webb Subdivision of Corpus Christi, Nueces County, Texas.

The contract further provided that the deal should be closed on or before February 15, 1950 (the contract stated 1949 through typographical error).

On February 8, 1950, plaintiff received a letter from attorneys representing Fred F. English (a son of Mrs. Rudolph English), Elizabeth Veselka (a daughter of Mrs. English) and her husband, Adolph J. Veselka, informing plaintiff that these parties owned an interest, right and title in and to the property above described, that they would not sell their interest and had not authorized any one to sell it for them. On February 11, 1950, plaintiff notified defendant that he had complied with his contract by depositing the required amount of

money with the Guaranty Title & Trust Company, and that if she was unable to convey the full title to the property he would expect her to convey her undivided interest, with a proportionate reduction or abatement in the purchase price. Thereafter, on February 14, 1950, plaintiff received a letter from defendant dated February 10, 1950, stating that in view of the fact that her children, Mrs. Veselka and Fred F. English, would not join her in any conveyance of the property, the sale could not be consummated. Thereafter plaintiff filed this suit seeking to compel Mrs. English to convey to him such interest as she did have in the property, with a proportionate reduction or abatement in the purchase price. Milton A. North, who acted as defendant's agent in negotiating the purchase contract, was made a party to the suit, and he has filed a cross-action asking for a real estate commission in the sum of $450. Fred F. English and Elizabeth English Veselka, joined pro forma by her husband, Adolph J. Veselka, have intervened herein.

The cause was submitted to a jury upon thirty-two special issues. Both Jones and North filed separate motions for instructed verdicts, which were overruled by the court, and after the jury had returned its answers both filed separate motions for judgment non abstante veredicto, which motions were overruled by the court and judgment rendered deyning Jones and North any recovery, and providing further that Mrs. English go hence with her costs, from which judgment Dudley Jones and Milton A. North have prosecuted this appeal.

Appellee, Mrs. English, contends that her counter-points Nine and Ten present the controlling issues in this appeal, and with this we are inclined to agree. Her Ninth Counter Point presents the contention that inasmuch as Jones knew at the time the contract was executed that Mrs. English could not perform the contract, he is not entitled to partial specific performance. The Tenth Counter Point presents the contention that inasmuch as the contract required that the seller furnish the purchaser "a policy of title insurance to be

issued by the Guaranty Title and Trust Company of Corpus Christi, Texas, in the usual and customary form," which policy the Title Company will not issue in the usual and customary form, and Jones having refused to waive such provision, he is not entitled to partial specific performance.

The evidence shows and the jury found that both Jones and Mrs. English knew that her children owned an undivided interest in the property and that Mrs. English could not convey the whole of the title thereto without the joinder of her children. The evidence further shows that originally the children, all of whom were of age, were agreeable to joining their mother in this conveyance. The reason they did not go through with the matter was that Mrs. English insisted that her son William, whose interest she had previously purchased, should have a child's share of the consideration to be paid by Jones. It was this dispute which finally caused the other children to decide not to join their mother in the execution of the deed to Jones, a situation for which Jones was not in any way responsible.

■ Mrs. English contends that this contract was nothing more than an option without consideration because it was impossible for her to perform it in full, and therefore Jones could either insist on partial specific performance or not, as he saw fit, while she could not legally insist upon partial specific performance. We cannot agree that the contract was only an option. If her children had joined her in the execution of the deed, as no doubt they originally intended to do, Jones would have had no option but to accept the property and pay the money called for in the contract. By its terms Mrs. English agreed to convey the property and Jones agreed to purchase and pay the consideration stated. Jones had no option in the event he was tendered a proper deed and Mrs. English complied with her part of the obligations stated in the contract.

If the inability of the vendor to convey full title to the property would render the contract nothing more than an option, then partial specific performance could never exist, as it is only when the vendor has contracted to do something that he cannot do that a partial specific performance is sought by the purchaser.

■ Mrs. English next contends that there was no mutuality because she was bound and Jones was not. We do not agree. As above stated, if her children had joined in the deed Jones would have been bound and could have been compelled to have performed his part of the contract. The mere fact that Jones knew that the children would have to join in the execution of the deed did not change the situation. A very enlightening discussion along this line is found in Vanzandt v. Heilman, 54 N.M. 97, 214 P.2d 864, 870, 22 A.L.R.2d 497. In that opinion the court said:

"From the cases and comments referred to and quoted, we have come to the conclusion that the mere lack of mutuality of remedy in favor of the defendant is not ground for refusing equitable relief. As stated by Judge Cardozo in Epstein v. Gluckin, supra, [233 N.Y. 490, 135 N.E. 861], 'What equity exacts to-day as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to the plaintiff or defendant'; or, as stated by Judge Harlan Stone in his article quoted from 16 Columbia Law Review, 'There is want of mutuality of remedy, when and only when the court is unable for any reason to insure the defendant's receiving that which he is entitled to receive in exchange for the performance of his own promise;' provided the transaction is free from fraud, duress, unfairness or other inequities."

Here the court is in a position to give Mrs. English exactly what she would have received if her children had joined her in a conveyance of the property to Jones, which was $5/8$ of the consideration to be paid in cash.

There is no merit to the contention that to enforce specific performance would be to make a new contract. Mrs. English made a contract. If her children had joined in a deed, her interest in the contract to sell was ⅝. It remains a ⅝ interest. The specific performance against her is on her own contract and her interest is exactly the same whether all or none of her children join in a deed. This is not the making of a new contract, it is the enforcement of Mrs. English's contract.

There seem to be some states that hold that the mere knowledge of the purchaser of the fact that the vendor does not own the whole of the title to the property at the time the contract is signed will prevent him from seeking partial specific performance. There can be no reason for such a rule, unless there is something in the nature of bad faith on the part of the purchaser.

Here Jones entered into the contract to purchase the property from Mrs. English, who was in possession of the property and had been exercising dominion over it since the death of her husband. She was apparently the one from whom a person would seek to purchase the property.[1] Jones had a right to believe that if Mrs. English was willing to enter into a solemn written contract to convey the whole of the property to him that she knew what she was doing and that she had a satisfactory arrangement with her adult children to join her in execution of the deed that would follow.[2] Under such circumstances, where Jones is willing to accept such title and Mrs. English is able to convey, with a proportionate reduction in consideration, there is no reason why he should not have such partial specific performance; it would not be unjust or oppressive.

Regardless of what the law may be in other states, the law in this State requires that under the circumstances here existing Jones is entitled to partial specific performance. Ward v. Walker, Tex.Civ.App.,

1. That the vendee, Jones, knew that Mrs. English did not own the full title, is the fact upon which she relies to defeat his right to partial specific performance. Some text-writers state that such knowledge will defeat a vendee's right to partial specific performance. 111 Williston on Contracts, § 1436; 49 Am.Jur., Specific Performance, § 106; 81 C.J.S., Specific Performance, § 21, p. 450. On the other hand, it is not unusual that one will make a contract with the one who is the logical one to complete title by acquiring outstanding interests. The note in 154 A.L.R. p. 776, states: "If specific performance, with an abatement in purchase money, is to be denied where the vendee at the time of contracting knew the vendor had actual title to only a partial interest, it would seem reasonable, generally speaking, to limit the denial to cases where the vendee also knew that the vendor was without means of furnishing the title contracted for." The note then cites numerous cases in support of that view.

Actually, the majority rule is that knowledge on the part of the vendee does not defeat his right to specific performance. "But most of the cases by their silence on the point, and sometimes by direct statements or implications, negative the idea that mere knowledge or notice that the seller did not presently have complete title is a bar to granting the purchaser partial specific performance." 148 A.L.R. 572. A closer examination of the authorities which announce the rule that knowledge by the vendee defeats his right to specific performance, reveals that: "On their facts, however, few cases give convincing support to that proposition." 154 A.L.R. 774.

2. "It would seem that ordinarily a purchaser may reasonably assume that the seller would not undertake to deliver a specified title if without any means whatever of securing it. So there would appear to be good ground for distinguishing between a case where the purchaser knows that the acquisition of title is a mere possibility or gamble, and a case where he is justified in supposing the contrary. On this point, compare the cases set out supra.

"One might suppose that in many cases where a vendor at the time of contracting had title to one of two tracts sold and expected to be able to obtain title to the other, the disappointment of his expectation would furnish no reason for denying the vendee a conveyance of that to which the vendor had title, whatever the knowledge of the vendee may have been." 148 A.L.R. 572.

159 S.W. 320; Hays v. Marble, Tex.Civ. App., 213 S.W.2d 329; Dittoe v. Jones, Tex.Civ.App., 220 S.W.2d 315.

We conclude that the contract was not an optional one, that it did not lack mutuality, that it would not be unjust or oppressive to grant Jones partial specific performance, and that same should not be denied simply because both Jones and Mrs. English knew, or should have known, at the time the contract was signed, that she could not convey full title to the property without the joinder of her adult children.

■ The jury found that Jones did not give appellee reasonably prompt notice of his willingness to take the property subject to the leases, and without deduction for such leases from the purchase price. Jones wrote Mrs. English, in effect, on February 11, 1950, that he would expect her to carry out her contract to the extent she was able to do so. This was sufficient notice, especially where Jones is not asking for any reduction in the purchase price due to the existing leases. He had a right to waive the matter of the leases and the only contest that could properly have arisen was as to his right to a reduction in consideration on account of the existence of the leases. If Jones had so demanded, he would have been entitled to have the purchase price reduced, due to the existing legal leases. Steindler v. Virginia Public Service Co., 163 Va. 462, 175 S.W. 888, 95 A.L.R. 220; Manning v. Cohen, 124 La. 869, 50 So. 778; Austin v. Ewell, 25 Tex. Supp. 403; Heirs of Roberts v. Lovejoy, 60 Tex. 253; Puckett v. Hoover, Tex.Civ. App., 197 S.W.2d 602; Eppstein v. Kuhn, 225 Ill. 115, 80 N.E. 80, 10 L.R.A.,N.S., 117. Certainly, Mrs. English could not complain because Jones waived his right to recover the value of the detriment caused to him by reason of the leases.

■ The only real fact issue raised by the pleadings and the evidence, so far as Jones is concerned, is whether Milton A. North, the real estate agent who purported to represent Mrs. English in this transaction, was in truth and in fact the agent of Jones, and whether Jones and North had entered into a conspiracy to defraud Mrs. English. The jury's answers are to the effect that North was the agent of Mrs. English and not the agent of Jones, and that no conspiracy existed between Jones and North. With this matter settled, the trial court should have granted the motion of Jones for judgment notwithstanding the verdict. It is true the court submitted to the jury and the jury found that it would be inequitable to grant Jones partial specific performance of the contract with a corresponding reduction of the consideration. This was not a question for the jury but one to be determined by the court. It should be determined from the established principles and doctrines of equity, with which the jury are not presumed to be familiar. Bergstedt v. Bender, Tex.Com. App., 222 S.W. 547; Fabra v. Fabra, Tex. Civ.App., 221 S.W. 1008; Bourland v. Huffhines, Tex.Civ.App., 269 S.W. 184, aff. 280 S.W. 561; English v. Underwood, Tex. Civ.App., 5 S.W.2d 1033.

If Mrs. English should be excused from performing this contract, insofar as she is able to do so, it would be because her children refused to join her in the deed, and the reason they refused was because she wrongly insisted that her son William, who owned no interest in the property, be given a child's share of the consideration. Thus Mrs. English is seeking to defeat Jones' right to partial specific performance of the contract because she agreed to convey the whole of the title to the property when she held only ⅝ of such title, and because she agreed to a conveyance of the property free from leases when she could not do so, and her further insistence that her son William be given a child's portion of the consideration to which he was not entitled. These do not constitute sufficient reasons for denying Jones partial specific performance of the contract.

■ The appellant Milton North was not entitled to judgment notwithstanding the verdict because, according to the findings of the jury, he rendered a disservice, rather than a service, to Mrs. English.

Hume v. Bogle, Tex.Civ.App., 204 S.W. 673; Webb v. Durrett, Tex.Civ.App., 136 S.W. 1189.

That part of the judgment which decrees that North take nothing by reason of his cross-action will be affirmed.

The judgment as to Dudley Jones will be reversed and judgment here rendered granting him partial specific performance of the contract as prayed for by him.

Affirmed in part, reversed and rendered in part.

NORVELL, Justice (dissenting).

It is not the function of courts to make contracts for people. On this premise, I base my dissent to the decree of this Court which orders Mrs. English to execute a conveyance for a consideration she never agreed to accept. Mr. Jones in this suit is not tendering the full purchase price and waiving any and all defects in the title. He is insisting upon an abatement in price, but the contract which Mrs. English signed is not divisible. She did not agree to convey an undivided five-eighths of the property or any other interest therein for $5,937.50, i.e., five-eighths of $9,500. The parties made no agreement covering the possible circumstance that at the time set for the closing of the deal, Mrs. English would not be able to convey the entire title. We should not contract for them. If it be urged that such position would defeat any demand for a so-called partial specific performance, let me point out that in cases of indivisible contracts there should be present either an express contractual provision supporting the order of partial specific performance or strong elements of estoppel. In this case there is neither.

As Mr. Jones knew at the time the contract was executed that Mrs. English did not own the entire title to the property, no principle of estoppel operates to preclude her from effectively protesting a reduction in the purchase price agreed upon. "The general doctrine of the right of the vendee to specific performance with an abatement from the purchase price is qualified by an important limitation—that it can not be invoked by a purchaser who, at the time of the making of the contract, had notice of the fact that the vendor had a limited interest in the land, or that his title was defective, or the quality deficient." 49 Am.Jur. 125, Specific Performance, § 106.

A reading of the statement of facts and the findings of the jury convinces me that this is no proper case for the issuance of the mandatory writ, placing Mr. Jones in the position of a cuckoo in the English family nest, so to speak, by making him a tenant in common with the English children. However, I wish to place my dissent upon a broader ground than the particular facts of this case, and accordingly will use impersonal letters and the never ending litigation over "Blackacre" for the purposes of illustration. The simple factual situation disclosed by the present record is as follows:

A, B and C own Blackacre. A agrees to sell all of Blackacre to X for $1,500. B and C are not mentioned in the contract. However, both A and X know of the interest of B and C. X cannot force A to convey to him an undivided one-third interest in Blackacre upon the payment of $500, for the reason that the parties knew of A's limited interest at the time the contract was made, yet, nevertheless, did not agree that A should sell an undivided one-third interest in Blackacre for $500, and the courts will not make such contract for them.

The proposition stated is not only supported by the quotation from American Jurisprudence, but is in accordance with the general American rule on the point. 81 C.J.S., Specific Performance, § 21(2), p. 448, 5 Williston on Contracts 4012, § 1436. This rule is fairly simple of statement and of application and I would follow it.

But it is said that the Texas cases, namely, Ward v. Walker, Tex.Civ.App., 159 S.W. 320, Hays v. Marble, Tex.Civ.App., 213 S.W.2d 329, and Dittoe v. Jones, Tex.

Civ.App., 220 S.W.2d 315, 317, are contrary to the prevailing rule. With this, I do not agree. The analogy between those cases and the present one is more seeming than real. Equity abounds in pretenses, fictions, inventions, devices and trusts which are not true trusts, and quasi-contracts. It is a fertile field wherein unsound doctrines sometimes take root and render the operation of the law unnecessarily harsh and oppressive. "With the excesses of chancery are sown the seeds of tyranny in the English law." It is sometimes tempting and even upon occasion desirable to regard that which is similar as being identical, but it is a course fraught with peril. We first say: "In this unusual case, mutuality is not essential to specific performance," then, "Mutuality is not necessary to specific performance," and, finally, "Mutuality is immaterial to specific performance." Particularly in the field of quasi-contracts, where we regard that as a contract which appears to be a contract, conceptual confusion often abides, and the danger of the unwholesome enlargement of the mandatory writ under the guise of enforcing a quasi-contract is real indeed. While equity often proceeds with solemn platitudes and maxims and protestations of its own righteousness, it should be remembered that the gaol has ever been an essential part of the chancellor's equipment and that equitable sanctions are among the most harsh and drastic known to the law. While some situations demand strong remedies, the use of the mandatory injunction should not be resorted to upon some seeming similarity to decided cases which upon principle may be clearly distinguished. An equitable remedy should not be tendered in lieu of an action at law, simply because a jury might look with disfavor upon a substantial award of damages. Article 1, § 15, Constitution of Texas, Vernon's Ann. St.

As to the Texas decisions above cited, it seems necessary to disregard the express wording contained therein in order to reach the conclusion that such authorities support the rendition of the decree in this case. In those cases, the contracts involved *showed upon their face* that a number of parties were co-owners of property. It was not necessary, as is the case here, to go outside the contract and dredge up a supposed equity to support the writ. The operating principle involved, as stated in Dittoe v. Jones, is "that where a number of parties execute a contract to sell real estate and it develops that one or more of them do not or cannot perform, those who are able to do so are bound to convey their interest and specific performance will be decreed in favor of the purchaser because the purchase price shall be apportioned among them. * * * The rule above announced is derived from the fact that one of the owners of real estate may sell his interest without the permission of the other owners, and that when he signs a contract of sale he is not affected if some of the other owners do not sell in view of the fact he is to receive his full share of the sale price."

The case therefore supports this proposition: If a contract shows on its face that A, B and C are owners of Blackacre and that they agree to sell same to X for $1,500, but C fails to sign the agreement, X may nevertheless compel A and B to perform upon the payment of $1,000, for the reason that the contract may be considered as severable, i.e., A agreed to sell X an undivided one-third interest for $500 and B agreed to do likewise. The decree is supported by a legitimate and proper construction of the contract.

When we consider estoppels (quasi-contracts), the element of knowledge on the part of the contracting parties as to the condition of the title and quantity of the interest of the vendor is a controlling factor. If the vendee does not have knowledge of the vendor's limited title, he is unable to protect his interests by agreement and we have a true case of quasi-contract proceeding upon an estoppel basis. This is well illustrated by the dictum of Lord Eldon in Mortlock v. Buller, 10 Ves.Jr. 292, 315, 32 Eng.Reprint 857, 866:

"* * * I also agree, if a man, having partial interests in an estate, chooses to enter into a contract, representing it, and agreeing to sell it, as

his own, *it is not competent to him afterwards to say,* though he has valuable interests, *he has not the entirety;* and therefore the purchaser shall not have the benefit of his contract."

This is a clear statement of estoppel and proceeds upon the theory that the vendor represented something to the vendee which was untrue and which the vendee relied upon to his hurt. This principle should be applied only in cases where the vendee occupies a superior equitable position, such as where he has been imposed upon by a representation as to the nature and extent of the vendor's title. I would not extend the estoppel principle beyond the statement of Lord Eldon, nor apply it in cases where both parties have equal knowledge. Courts have reaped a harvest of their own making by the over-extension of the equity arm. There are decisions in the books representing a minority view, in my opinion, together with remarks by annotators and commentators, which proceed confidently upon the assumption that what's good for the parties is what the chancellor says is good for them, rather than what they contracted for. To say in effect that because parties often contract to sell property they do not own, courts should therefore read into the contract provisions which the parties omitted, is a prime example of the non sequitur. If a person, being aware of the fact, contracts with a party owning less than the entire title and desires to purchase less than the whole at an abated price in the event the seller is unable to convey the entire title, why shouldn't he be required to say so in the contract?

Let us return to the specific contract here involved and see what it does contain and what it does not contain. Two parties only are named therein, and the agreement in part reads as follows:

"This memorandum of agreement made and entered into by and between Mrs. Rudolph English, hereinafter called Seller, of the County of Nueces, State of Texas, and Dudley Jones, hereinafter called Purchaser, of the County of Nueces County, State of Texas, Witnesseth:

"1. The Seller, for the consideration and upon the terms hereinafter set out, hereby agrees to sell and convey unto Purchaser, and Purchaser agrees to buy, the following described property situated in Nueces County, Texas, to-wit: (Here follows description of the property.)

"2. The purchase price is $9500.00 Dollars, which the Purchaser agrees to pay Seller * * * in cash * * * when deed to said land is executed and delivered to Purchaser, * * *."

The contract contains no mention of the children of Mrs. English. Despite the fact, as found by the jury, both parties knew at the time of the execution of the contract, that Mrs. English did not own the entire title to the property, *the parties did not contract that Jones should receive whatever interest Mrs. English might hold at the time set for closing of the deal and that the purchase price should be proportionately abated.* If the parties themselves, having full knowledge of the condition of the title, did not see fit so to contract, why should we, as an appellate court, so contract for them?

Mrs. English, for obvious reasons, could never have secured a decree compelling Jones to pay to her five-eighths of $9,500.00 in exchange for her undivided interest in the real property involved. Jones made no agreement to that effect. On the principle that equity be equality, I would likewise refuse Mr. Jones' request that we make and enforce such an agreement.

In my opinion, the trial court's judgment should be affirmed and I accordingly dissent from the decision of the Court.