**BERGSTEDT v. BENDER. (No. 136–2045.)**

(Commission of Appeals of Texas, Section A. June 16, 1920.)

1. **Vendor and purchaser** ⊂⟹44—**Contract held not to have been procured through undue influence.**

Contract for sale of lands *held* on the evidence, not to have been procured through undue influence.

2. **Specific performance** ⊂⟹8 — **Remedy within court's discretion.**

A decree for specific performance of a contract is not a matter of right, but rests in the sound discretion of the trial court, which discretion is not arbitrary, but judicial, and must be exercised according to the established doctrine and principles of equity.

3. **Specific performance** ⊂⟹16—**Relief denied where contract fair at inception has become harsh and inequitable.**

Liberty of contract should not be unduly restricted, and for that reason specific performance will not necessarily be denied, because a contract fair at its inception has since become inequitable through subsequent events, for a court largely judges a contract as of the time of execution, but if there has been a great change in circumstances, whereby the enforcement of the contract would be harsh and inequitable, specific performance will be denied.

4. **Specific performance** ⊂⟹16—**Denied where death of vendor renders contract inequitable.**

Where a woman who had a considerable expectancy contracted to sell her homestead, worth nearly $5,000, for $1,500, the purchaser agreeing that she might occupy it rent free for life, and that he should pay taxes, *held* that, where the woman died before the contract was executed, specific performance as against the devisee of the homestead will be denied, and the purchaser left to his remedy at law; for, while the contract may have been fair at its inception, death rendered it inequitable.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by W. F. Bender against Louis Bender, in which Peter Bergstedt intervened and answered. A judgment for defendant and intervener was reversed and rendered by the Court of Civil Appeals (187 S. W. 735), and the intervener brings error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

D. E. Simmons and Jones & Jones, all of Houston, for plaintiff in error.

T. H. Stone and H. E. Stephenson, both of Houston, for defendant in error.

SONFIELD, P. J. On the 26th day of November, 1913, Mrs. Mary Hafer, under her maiden name, Bergstedt, entered into a written contract with W. F. Bender, wherein she agreed to sell and convey to Bender a certain fractional lot in the city of Houston, known as her residence or homestead, upon which she had resided for some 40 years. Under the terms of the contract, Mrs. Hafer was to have the right to occupy the premises without cost to her during her life, such right not to be assigned, nor the premises sublet. She obligated herself to carry insurance on the improvements in the sum of $1,000 until her death, the policy to be payable to Bender. In the event of the destruction of the premises by fire, the house was to be rebuilt from the proceeds of the insurance, and Mrs. Hafer given the right of occupancy. Bender obligated himself to pay all taxes accruing after the year 1913. He was to pay Mrs. Hafer for the property the sum of $1,500 cash, $100 upon the execution of the contract, and the remaining $1,400 within 60 days from the delivery of a complete abstract of title to the property, provided the title was good and merchantable. Any defects in the title were to be pointed out in writing by the attorney of Bender, and either party should have 60 days in which to cure such defects. In the event the defects were not cured by either party within that time, then, upon demand of Bender, the $100 paid by him should be returned, and both parties thereupon be released from all liability under the contract as to each other. A part of paragraph 3 of the contract provides:

"If the title to said property is found to be a good and merchantable title, and second party does not within 60 days after delivery of abstract of title and upon a tender of a warranty deed in accordance with the terms and conditions of this contract by first party pay to the first party the remaining amount, namely, fourteen hundred dollars ($1,400.00) in cash due hereunder, then first party shall forfeit to herself and keep the said sum of one hundred dollars ($100.00) this day paid by second party, which both parties hereby agree shall be forfeited as liquidated damages in the event of failure of second party to carry out the conditions of this contract, and thereupon both parties hereto shall be released from all liability hereunder."

Mrs. Hafer died on January 14, 1914. At the March term of the county court of Harris county, 1914, Mrs. Hafer's will was probated, and Louis Bender, named therein as executor, duly qualified. Peter Bergstedt, a cousin of the testatrix, was the sole devisee under her will.

On April 4, 1914, W. F. Bender filed his petition in the county court of Harris county against his father, Louis Bender, as executor of the estate of Mrs. Hafer, seeking specific performance of the contract. The executor filed no answer, and interposed no objection to the granting of the relief sought. Peter Bergstedt intervened for the purpose of preventing enforcement. The trial resulted in a judgment in favor of W. F. Bender, from which intervener appealed to the district court of Harris county.

Specific performance was resisted on the ground that the contract was a mere option without consideration, and withdrawn before its acceptance; that it lacked mutuality, and was of a character which would not be specifically enforced; further, that the property was not properly described. He also pleaded that the execution of the contract was procured through the exercise of undue influence upon 'Mrs. Hafer by plaintiff, who overreached and wrongfully persuaded and induced her to execute the contract; that the property was of the reasonable market value of $5,000, and the consideration agreed to be paid was wholly inadequate.

The cause was submitted to a jury upon the two following issues:

"(1) Did Mrs. Hafer (née Bergstedt) execute the contract which is in evidence before you by reason of undue influence of W. F. Bender operating upon her mind at said time? Answer Yes or No.

"(2) What was the reasonable market value of the premises in controversy in this suit on November 26 and 27, 1913? State the amount you find in dollars and cents."

The jury answered the first question Yes, and the second that the value of the property at that time was $4,900. Upon these answers the trial court rendered judgment in favor of defendant, Louis Bender, executor, and inter-

vener, Peter Bergstedt. On appeal, the Court of Civil Appeals reversed the judgment of the district court, and rendered judgment in favor of plaintiff. 187 S. W. 735.

The Court of Civil Appeals held there was no competent evidence to raise the issue of undue influence; that the property was properly described, the contract mutually binding, and the consideration adequate in view of the conditions existing at the date of the contract.

[1] In the view we take of the case, and the recommendation to be made with reference to its disposition, we deem it unnecessary to set out a full statement of the evidence. For the purpose of this opinion, the following will suffice:

There is evidence that at the date of the execution of the contract Mrs. Hafer was 70 years of age, and lived by herself upon the property here in controversy. Plaintiff was quite a young man, and conducted a meat market next door to her residence for many years. Mrs. Hafer was injured by a fall about a year before her death. There was evidence that subsequent to her injury she was physically frail, and her mental faculties greatly impaired. Some time prior to the date of the contract, she had executed her will, making intervener her sole devisee, declaring in her will that the property herein involved was the only real estate owned by her. Prior to negotiations ultimating in this contract, she had declined offers to purchase at a price in excess of that agreed to be paid by plaintiff, giving as her reason that she had devised it to intervener. A witness for plaintiff testified that Mrs. Hafer showed him the contract with plaintiff before its execution. He stated to her that the price was too cheap, and offered to make the same character of contract and give her $1,000 more than she was to receive. The offer was declined, on the ground that she wanted plaintiff to have it. The undisputed evidence established the market value of the property, at the date of the contract, to be $4,900, as found by the jury. Mrs. Hafer was taken sick on the 7th day of January, 1914, and the abstract to the property was delivered to plaintiff on the following day. From the time of the delivery of the abstract to the date of her death, on the 14th of January, 1914, Mrs. Hafer was too ill to attend to any kind of business. After receiving the abstract, and before her death, plaintiff concluded to consummate the contract. His attorney advised Mr. Tharp, who had acted as attorney for Mrs. Hafer in the matter of the contract, that they were ready to close the deal. Tharp stated that he would take the matter up with Mrs. Hafer, and declined to accept any tender. Mrs. Hafer died without executing a deed.

It must be conceded that there was no direct evidence of the exercise of any undue influence by plaintiff over Mrs. Hafer in ref-

erence to the contract. The exercise of undue influence is rarely susceptible of direct proof, and resort must usually be had to circumstances. In reaching a conclusion, consideration must be given to the age, health, mental condition, and financial status of Mrs. Hafer, her relations with plaintiff, and how far she was dependent upon and subject to his control, together with the opportunity which he had to exercise such influence.

Upon a careful consideration of the record, we concur in the conclusion reached by the Court of Civil Appeals that there was no competent evidence to raise the issue of the exercise of undue influence. The question remains, however, whether the contract is of such character as will be specifically enforced.

Intervener contends that the contract was but an option to purchase, unsupported by any consideration, and subject to withdrawal by Mrs. Hafer at any time prior to its acceptance, and that the undisputed evidence established that she did so withdraw the offer. Further, that the contract is lacking in mutuality, and will not therefore be specifically enforced. We cannot so construe the contract. The contract was one of purchase and sale. By its terms Mrs. Hafer obligated herself to sell and convey, and plaintiff to purchase and accept a conveyance, conditioned only upon the title being good and merchantable. It is true that, in virtue of that part of paragraph 3 hereinabove set out, Mrs. Hafer could not have had the contract specifically enforced against plaintiff; he being given the right of election between the consummation of the purchase and the forfeiture of the money paid. Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847; Redwine v. Hudman, 104 Tex. 21, 133 S. W. 426. For plaintiff to have declined to take the property, in the event the title was good and merchantable, would have been a clear breach of the contract. But for this provision in paragraph 3 specific performance could have been enforced against him. That provision but marked the limit of plaintiff's liability and the extent of Mrs. Hafer's remedy in the event of a breach. Through this stipulation, Mrs. Hafer divested herself of the right to specific performance, leaving that remedy unimpaired as to plaintiff. The fact that Mrs. Hafer, through the contract, limited her right upon a breach to a forfeiture of the money paid will not prevent specific enforcement at the instance of plaintiff.

[2] Intervener urges that specific enforcement be denied, on the ground that the consideration of the contract is grossly inadequate, and its enforcement harsh and inequitable as to him. A decree for the specific performance of a contract is not a matter of right, but rests in the sound discretion of the court; a discretion not arbitrary but judicial, and exercised under the established doctrines and settled principles of equity. The relief will be granted or withheld by the court upon a consideration of all the circumstances of each particular case, and no definite rule has been announced by which the action of the court can be determined in all cases. As said in Willard v. Tayloe, 8 Wall. 567, 19 L. Ed. 501:

"In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice, and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties. It is not sufficient, as shown by the cases cited, to call forth the equitable interposition of the court that the legal obligation under the contract to do the specific thing desired may be perfect. It must also appear that the specific enforcement will work no hardship or injustice, for if that result would follow the court will leave the parties to their remedies at law."

[3, 4] It is contended by plaintiff that, viewed in the light of the conditions and circumstances existing at the date of the contract, the consideration was adequate and the terms fair and equitable. While Mrs. Hafer was quite old, it was in contemplation of the parties that she would live for some considerable period, her life expectancy being 8½ years. The cash to be paid her was but a part of the consideration. In addition thereto, she was to have the right of occupancy during her life, free of all taxes; and, had she lived for a period of years, the contract might have become extremely onerous to plaintiff. The contention, if conceded, would be quite convincing urged against the setting aside of an executed contract; but it is not so potent, and is far from conclusive, when urged in favor of specific performance.

It is true that courts of equity will, in large measure judge a contract as of the time of its execution. If fair when made, its enforcement will not necessarily be denied because it has become harsh and inequitable through subsequent events and changed conditions. Courts will not enter into an investigation and determine the wisdom of a bargain made by persons competent to deal with their own affairs. Liberty of contract will not be unduly restricted. Mere hardship resulting from miscalculations or from contingencies which might have been foreseen, and for which plaintiff is not at fault, will not ordinarily prevent a specific enforcement. 25 R. C. L. 224. This principle finds application and illustration in the many cases where, through fluctuation in values, a contract, fair in its inception, becomes harsh and oppressive.

But it is well established that the court, in determining specific enforcement, is not limited to, or entirely governed by, the conditions existing at the date of the contract. Where there has been a great change of circumstanc-

es, whereby the enforcement of the contract against a party thereto would be harsh and inequitable, violative of its true intent and spirit, or would not effectuate the purpose of its execution, or where, through such subsequent events the rights of third persons become involved, and an enforcement would be harsh and inequitable as to them, the court, in the exercise of its discretion, may deny enforcement. 25 R. C. L. 253.

As said by Mr. Justice Field in Willard v. Tayloe, supra:

"The same discretion is exercised where the contract is fair in its terms, if its enforcement, from subsequent events, or even from collateral circumstances, would work hardship or injustice to either of the parties."

In 2 Story, Eq. Jur. § 750A, the rule is announced that:

"Courts of equity will not proceed to decree a specific performance where the contract is founded in fraud, mistake, undue advantage, or gross misapprehension, or where from a change of circumstances, or otherwise, it would be unconscientious to enforce it."

The doctrine is recognized in Marks v. Gates, 154 Fed. 481, 83 C. C. A. 321, 14 L. R. A. (N. S.) 317, 12 Ann. Cas. 120, wherein the court says:

"A contract may be valid in law and not subject to cancellation in equity, and yet the terms thereof, the attendant circumstances, and in some cases the subsequent events, may be such as to require the court to deny its specific performance."

Upon the death of Mrs. Hafer, the title to the property vested in intervener. The relief sought by plaintiff is against him as the present owner. He was not a party to the contract. True, his title vested after its execution, but after-acquired rights of third persons are equitable considerations to be regarded in determining whether the contract should be specifically enforced. Curran v. Holyoke Water Power Co., 116 Mass. 90; 36 Cyc. 619.

Viewed, then, in the light of conditions existing at the date of the contract, and the changed conditions through the death of Mrs. Hafer, should the court decree a specific enforcement? We think not.

It is not contended that $1,500 is an adequate consideration for property worth, at the date of the contract, $4,900. The cash consideration, standing alone, would, under the facts of this case, be so grossly inadequate as to warrant a court, not only to refuse specific performance, but, in the event the contract had been executed, to set aside and cancel the deed made in virtue thereof. It is recognized by the plaintiff and by the Court of Civil Appeals that the greater part of the consideration was the right of occupancy of the property by Mrs. Hafer, and its protec-

tion, through payment by plaintiff of all taxes thereafter to accrue, thus insuring to her a home place for and during the period of her life. It cannot be doubted from the record that this was the motive impelling Mrs. Hafer to enter upon the contract. The death of Mrs. Hafer, while the contract was wholly executory, nothing having been done thereunder, save the payment of a small part of the cash consideration and the procuring of an abstract, rendered complete performance on the part of defendant impossible. He could but pay the cash consideration, her death freeing him from the obligations forming the greater part of the consideration. He seeks at the hands of the court, as against intervener, the enforcement of a contract through which he will acquire title to property for a consideration, not only far less than its market value, but far less than contemplated and provided for in the contract. A decree in his favor would not follow the terms of the contract. Conceding the fairness of the contract in its inception, its specific enforcement will, under the changed conditions and circumstances, enable plaintiff to obtain an inequitable and unconscionable advantage in consequence of an unforeseen event, and violate the spirit and intention of the contract. Under such circumstances, a court of equity should not lend its aid, but remand the plaintiff to his remedy at law.

We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

PHILLIPS, C. J. We approve the judgment recommended in this case.

