### CENTRAL POWER & LIGHT COMPANY, Appellant,

v.

### Richard A. CABALLERO, Appellee.

### No. 04–90–00112–CV.

Court of Appeals of Texas, San Antonio.

Dec. 12, 1990.

Rehearing Denied March 6, 1991.

Lev Hunt, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellant.

Jerald L. Abrams, Eagle Pass, for appellee.

Before BUTTS, CARR and BISSETT,[1] JJ.

## OPINION

BISSETT, Justice (Assigned).

This case involves an action for employment discrimination based on "handicap" under the Commission on Human Rights Act, TEX.REV.CIV.STAT.ANN. art. 5221k. Trial was to a jury, which answered all issues favorably to plaintiff Richard A. Caballero. Judgment was rendered on the verdict following plaintiff's election "to accept the verdict and answers of the jury as the relief accorded to him under the Commission of Human Rights Act of the State of Texas in lieu of reinstatement with back pay." Defendant Central Power & Light Company has appealed. We reverse and remand.

Richard A. Caballero, hereafter "Caballero", was employed by Central Power & Light Company, hereafter "CPL", in 1964. He was a lineman or serviceman. He experienced trouble with his back in 1976 and went, on his own volition, to an orthopedic doctor in Mexico for treatment of his back. Thereafter, he continued to have problems with his back, and in 1985 or 1986, asked for time off to receive treatment from a chiropractor.

Subsequently, in September, 1986, Caballero asked to be exempt from climbing poles because his back was bothering him. Because of that and other factors, Caballero was asked to undergo a physical examination by Dr. Thomas York of Corpus Christi, which he did. Caballero complained to Dr. York that he had pain in his back and intermittent pain down his left

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

leg, described as "electricity-like" pain. Dr. York, following an examination, told him that he didn't think he was able to perform work as a lineman. Caballero was offered an office manager's job in Uvalde, Texas, by CPL, but wouldn't take it.

After Caballero quit working, he was paid five months' salary at $2,300.00 a month (or $11,500.00) by CPL, at which time he went on long-term disability, and received $1,400.00 a month from July, 1987 until about October, 1989, when trial began. In September, 1989, he obtained a job, teaching school, and made either $650.00 or $1,300.00 per month; the record is not clear as to the exact amount paid to him. He was teaching school at the time of trial.

The court submitted five questions to the jury, which found that on January 19, 1987, Caballero had a handicap (Question No. 1); which handicap did not impair his ability to perform the duties of a serviceman for CPL (Question No. 2); that the decision of CPL to remove Richard Caballero as a serviceman was not justified by business necessity (Question No. 3); and that Caballero had $33,000.00 loss of earnings in the past and $200,000.00 loss of earning capacity in the future (Question No. 4); $15,000.00 attorney's fees for work in the trial court was awarded; $10,000.00 was awarded in the event of an appeal to the Court of Appeals; and $5,000.00 was awarded if an appeal was taken to the Supreme Court of Texas (Question No. 5). CPL has appealed.

We first dispose of the cross-points presented by Caballero, plaintiff in the trial court and appellee in this court. He contends in the cross-points that this court erred in granting CPL's motion for an extension of time to file the statement of facts on the ground that the motion was not accompanied by an affidavit of the court reporter in support of the explanation of the need for the extension, or the certificate of the trial judge, as "required" by TEX.R.APP.P. 73(i) and Rule 3(B)(5) of the Local Court Rules of this court (Cross-point one); that this court erred in allowing the late filing of the statement of facts for the reason that the court reporter's certificate

shows that the statement of facts was completed on February 13, 1990 and no reasonable explanation was given for late filing as required by TEX.R.APP.P. 54(c) and 73 and Rule 3(B)(5) of the Local Court Rules of this court (Cross-point two); and that this court erred in denying his motion for affirmance or dismissal and in denying his motion for reconsideration for the said reasons stated in his cross-points one and two (Cross-point three).

The judgment in this case was signed on October 26, 1989. CPL's motion for new trial, filed on November 16, 1989, was overruled by operation of law on January 10, 1990. The transcript was delivered to the clerk of this court for filing on February 22, 1990, and was filed on the same day. The deadline for filing the statement of facts was February 26, 1990.

CPL filed its motion for an extension of time to file the statement of facts on February 23, 1990, and asked that the time for such filing be extended to April 2, 1990. The motion was granted and the statement of facts was filed on March 22, 1990.

This is the third time that Caballero has complained of the action by this court in granting an extension of time for the filing of the statement of facts. Two court reporters from San Antonio transcribed the trial proceedings in this case. The first court reporter, Patricia Gaddis, transcribed all of the testimony except that which was presented on the last day of trial. The second court reporter, Darrell Vinson, transcribed the final day's proceedings, which consisted mainly of jury arguments. Ms. Gaddis had substantially more to transcribe than did Mr. Vinson and it took longer. When that part of the statement of facts being prepared by Ms. Gaddis was not ready, CPL filed a motion for extension of time to file the entire statement of facts. In that manner, uncertainty was avoided with respect to the date the statement of facts was filed and the date subsequent appellate steps would be due.

All of the motions filed by CPL, as well as its responses to the motions of Caballero, were sworn to by counsel for CPL; attached to the motion for an extension of

time to file statement of facts was a certificate "Exhibit A," signed by Patricia A. Gaddis, on February 21, 1990, wherein it was stated:

I, Patricia A. Gaddis, Certified Shorthand Reorter [sic] in and for the State of Texas, due [sic] hereby request a one month extension on the statement of facts in cause number 9313, styled Richard A. Caballero versus Central Power and Light Company heard in Maverick County, Texas before the Honorable Judge Eugene Stewart on October 16th and 17th, 1989 due to a backlog in my work.

Apparently, Ms. Gaddis believed that she was executing an affidavit because "Exhibit A" to the motion for extension of time, prepared by the court reporter, is entitled "Affidavit for Extension of Time for Court Reporter's Transcript", and the statement of the court reporter contains a notary public seal by "Patricia A. Gaddis—Commission Expires February 17, 1993".

Although the court reporter's purported affidavit is not in proper form, the motion for extension of time to file the statement of facts was under oath and sworn to by movant's attorney. Considering all factors, we hold that there was substantial compliance with TEX.R.APP.P. 73 and Local Rule 3(B)(5), and that this Court properly granted CPL's motion for extension of time to file the statement of facts. Caballero's cross-points are overruled.

■ Caballero predicated his suit solely on TEX.REV.CIV.STAT.ANN. art. 5221k (Vernon 1987), the Commission on Human Rights Act (the "Act"). The Act was amended by the Legislature, effective September 1, 1989. The principal effect of the amendment, insofar as this case is concerned, was to eliminate "handicap" or "because of handicap" in the original statute and to substitute "disability" therefor, as defined in the amendments.

This case was filed on October 12, 1988 and was tried in October, 1989. Judgment was signed on October 26, 1989. CPL argues that the amendment of article 5221k, section 7.01 applies here. We do not agree. Generally, in the absence of any special language to the contrary, a statute will not be applied retroactively, even when there is no constitutional impediment against it. *Lubbock Indep. School Dist. v. Bradley*, 579 S.W.2d 78, 80 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). "Laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws." *Holder v. Wood*, 714 S.W.2d 318, 319 (Tex.1986). Changes in statutes merely affecting remedies or procedures may be applied retroactively. *Id.* In the case at bar, the changes made by the 1989 amendment to the statute did not affect remedies or procedures with affected vested substantive rights. Therefore, we apply the statute as it existed on the date suit was filed, and all statutory references hereinafter to the Act refer to the pre–1989 amendments to the statute.

CPL, in its first three points of error, asserts that the trial court erred (1) in granting judgment for damages in an equitable proceeding; (2) in granting judgment for damages where appellee failed to prove non-compliance with a court order by appellant required by article 7, section 7.01(g) of the Act; and (3) in submitting this cause to a jury where article 5221k, requires the trial court to proceed in equity.

Article 6 of the Act provides for administrative review of unlawful unemployment practice complaints by the Commission on Human Rights. Judicial review of the decision by the Commission is authorized by article 7, and provides for enforcement of the decision where it has been determined that there is reasonable cause to believe that the employer has engaged in an unlawful employment practice.

Section 7.01(a) of article 5221k, in relevant part, provides:

If the commission has made a determination that there is reasonable cause to believe that the respondent has engaged in an unlawful employment practice, and the commission's efforts to resolve the discriminatory practice to the satisfaction of the complainant and respondent through conciliation have been unsuccessful, the commission may bring a civil action against the respondent named in

the charge if a majority of the commissioners determine that the civil action may effectuate the purposes of this Act. The complainant has the right to intervene in a civil action brought by the commission. If the complaint filed with the commission pursuant to Section 6.01 of this Act is dismissed by the commission, or if within 180 days after the date of filing of the complaint the commission has not filed a civil action under this section or has not successfully negotiated a conciliation agreement between the complainant and respondent, the commission shall so notify the complainant in writing by certified mail. Within 60 days after the date of receipt of the notice, a civil action may be brought by the complainant against the respondent named in the charge ...

TEX.REV.CIV.STAT.ANN. art. 5221k, § 7.01(a) (Vernon 1987).

There is no evidence that Caballero filed any claim with the Commission; that a claim, if filed, was dismissed by the Commission; or that the Commission did not file a civil action within 180 days after a complaint was filed with it by Caballero. There is no evidence of any notice sent to Caballero by the Commission. However, considering the pleadings by the parties, the manner in which this case was tried, and the statements made in the briefs, we conclude that this is an appeal from a decision of the Commission and that all legal requirements for judicial review of such decision have been met.

Section 7.01(c) of the Act states:

If the court finds that the respondent has engaged in an unlawful employment practice as alleged in the complaint, the court may enjoin the respondent from engaging in an unlawful employment practice and order such additional equitable relief as may be appropriate.

Section 7.01(d) of the Act reads:

Additional equitable relief may include but is not limited to:

(1) the hiring or reinstatement, with or without back pay, but back pay liability may not accrue for any date more than two years before the date of filing of a complaint with the commission, and interim earnings and unemployment compensation benefits received shall operate to reduce the back pay otherwise allowable;

(2) the upgrading of employees with or without pay;

(3) the admission or restoration of union membership;

(4) the admission to or participation in a guidance program, apprenticeship, on-the-job, or other training or retraining program, with the use of objective job-related criteria in the admission of individuals to these programs;

(5) the reporting on the manner of compliance with the terms of a final order issued under this Act; and

(6) the payment of court costs.

Section 7.01(e) of the Act provides:

In any action or proceeding under this Act, the court in its discretion may allow the prevailing party, other than the commission, a reasonable attorney's fee as part of the costs. The state or an agency or a political subdivision of the state is liable for costs to the same extent as a private person, except that the state, a state agency, or a political subdivision is not liable for attorney's fees.

Section 7.01(f) of the Act states:

In the case of handicapped employees or applicants, the court must take into account the undue hardship defense, including the reasonableness of the cost of any necessary work place accommodation and the availability of alternatives or other appropriate relief.

Section 7.01(g) of the Act provides:

(g) In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this article, a party to the action or the commission, on the written request of a person aggrieved by the failure, may commence proceedings to compel compliance with the order.

A handicapped person is defined in section 2.01(7)(A) of the Act as follows:

"Handicapped person" means a person who has a mental or physical handicap,

including mental retardation, hardness of hearing, deafness, speech impairment, visual handicap, being crippled, or any other health impairment that requires special ambulatory devices or services, as defined in Section 121.002(4), Human Resources Code ...

The definition of "handicap" in section 2.01(7)(B) of the Act is:

a condition either mental or physical that includes mental retardation, hardness of hearing, deafness, speech impairment, visual handicap, being crippled, or any other health impairment that requires special ambulatory devices or services, as defined in section 121.002(4), Human Resources Code, but does not include a condition of addiction to any drug or illegal or federally controlled substances or a condition of addiction to the use of alcohol.

Under section 5.01(1) of the Act, it is an unlawful employment practice for an employer:

to fail or refuse to hire or to discharge an individual or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment because of ... handicap ...

In determining which type of suit was brought by Caballero against CPL, we look to the allegations made by Caballero in his trial petition. He alleged:

## II.

Plaintiff began his employment with Defendant in Maverick County, Texas, in 1964 and he continued to perform work for Defendant, in Maverick County, as a competent and loyal employee until January of 1987 with the exception of the period for which he was allowed absence due to military service. For the last several years of his employment with Defendant Plaintiff suffered from a back condition, diagnosed as a ruptured disc, a condition which is generally perceived as limiting performance of work-related activities but which did not prevent Plaintiff from performing his job for Defendant. At all times Plaintiff was an "Employee" and Defendant was an "Employer" as those terms have been defined in the Commission on Human Rights Act of the State of Texas, Art. 5221k, Sections 2.01(4) and 2.01(5), TRCS.

## III.

Plaintiff would show the Court and the Jury that he has been at all times relevant hereto capable of performing his job with Defendant and performing all of its essential functions and although he was able to meet all of his job requirements with Defendant he was involuntarily placed on temporary disability status by Defendant in January of 1987 based upon his physical condition as described above and, based upon that physical condition, his employment was subsequently terminated in June of 1987 in violation of Section 5.01 of the Commission on Human Rights Act of the State of Texas (Art. 5221k).

While employed by the Defendant and while carrying out the duties of his employment Richard Caballero's back condition constituted a "Handicap" and Plaintiff was and is a "Handicapped Person" as those terms are defined in sections 2.01(7)(A) and 2.01(7)(B) of the Commission of Human Rights Act of the State of Texas. This physical condition did not impair Plaintiff's ability to reasonably perform his job with the Defendant and Plaintiff's employment with Defendant is protected by Article 5 of the above statute from any actions on the part of the Defendant, his employer, adversely affecting Plaintiff's employment status based upon that condition.

Caballero's petition denominates this a suit that is governed exclusively by article 5221k, and he is entitled to only the relief provided by the Act. The relief is to be obtained in an equitable proceeding in the courts, following an appeal from the Commission on Human Rights, an administrative agency.

"The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law

but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects ..." *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084, 1087 (1926). Where the statute directs that action be taken in a certain way, it may be performed in no other manner.

The above rule has been applied in the following cases: *Texas Employment Commission v. International Union of Electrical, Radio & Machine Workers, Local Union No. 782, AFL–CIO,* 163 Tex. 135, 352 S.W.2d 252, 254 (1961), where there was an appeal from an order of the Texas Employment Commission under the Unemployment Compensation Act; *Schwantz v. Texas Dep't of Public Safety,* 415 S.W.2d 12, 15 (Tex.Civ.App.—Waco 1967, writ ref'd), where there was an appeal from an administrative decision of the Department of Public Safety; *Rowden v. Texas Catastrophe Property Ins. Ass'n,* 677 S.W.2d 83, 87 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.), where there was an appeal from an administrative order under the Texas Catastrophe Property Insurance Pool Act; and *Civil Service Commission of the City of Texarkana v. Carter,* 344 S.W.2d 225, 227 (Tex.Civ.App.—Texarkana 1960, no writ), where there was an appeal from an order issued by the Texarkana Civil Service Commission, an administrative agency. We see no reason why the rule should not be applied in the instant case.

■ Caballero failed to comply with article 5221k in many respects. He failed to obtain an injunction from engaging in any unlawful employment practice as required by section 7.01(c), and failed to prove that CPL had not complied with an order of the court issued in a civil action brought under the Act, as required by section 7.01(g). Further, he, by requesting trial by jury, elected to have matters submitted to the jury, rather than having the court decide them, as required by the Act.

A jury is presumed not to be familiar with the principles of equity. As stated in *Reynolds–Penland Co. v. Hexter & Lobello,* 567 S.W.2d 237, 245–46 (Tex.Civ.App.—Dallas 1978, writ dism'd) (on reh'g), speaking about questions whether a delay was "slight", a loss "small", or a denial of relief would be "such a hardship ... as to make it unconscionable", the court stated:

These ultimate determinations which trigger the interposition of equity are made by the *court,* not the jury. To permit a jury to determine these issues is to permit it to determine whether equitable relief should be granted. This is impermissible in our system. *Jones v. English,* 268 S.W.2d 686, 690 (Tex.Civ. App.—San Antonio 1954), *aff'd,* 154 Tex. 132, 274 S.W.2d 666 (1955). The question of whether equity ought to intervene must be determined by the court based upon all of the circumstances of the case and the principles of equity, with which a jury is not presumed to be familiar. *Bergstedt v. Bender,* 222 S.W. 547, 549 (Tex.Com.App.—1920, judgmt. approved); *Fabra v. Fabra,* 221 S.W. 1008, 1009 (Tex.Civ.App.—San Antonio 1920, writ ref'd); *Bourland v. Huffhines,* 269 S.W. 184, 186 (Tex.Civ.App.—Amarillo 1925), *aff'd,* 280 S.W. 561 (1926).

*Id.* at 246 (emphasis original).

This court, in *Jones v. English,* 268 S.W.2d 686 (Tex.Civ.App.—San Antonio 1954), *aff'd,* 274 S.W.2d 666 (Tex.1955), stated, with respect to specific performance of a real estate sales contract:

It is true the court submitted to the jury and the jury found that it would be inequitable to grant Jones partial specific performance of the contract with a corresponding reduction of the consideration. This was not a question for the jury but one to be determined by the court. It should be determined from established principles and doctrines of equity, with which the jury are not presumed to be familiar.

268 S.W.2d at 690.

CPL properly raised all three matters at trial. The judge submitted the issues in this case to the jury as though an employee had a guaranteed permanent contract of employment, indicating that past loss of earnings and future loss of wage-earning capacity can be recovered if an employee has any disability which does not impair his ability to perform his duties. That was

reversible error. Such submissions did not follow the dictates of the Act. CPL was deprived of a hearing to determine whether the court would enjoin any unlawful employment practice under section 7.01(c), deprived of a hearing to determine whether it had failed to comply with an order of a court under section 7.01(g), deprived of the equitable principles with which the court is familiar, but not the jury, and deprived of any consideration of the credits to which CPL is entitled. Caballero cites *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734–35 (Tex.1985), and *McClendon v. Ingersoll–Rand Co.,* 779 S.W.2d 69, 70 (Tex.1989), for the proposition that "discharge based on handicap is a statutory exception to the employment at will doctrine." Neither case had anything to do with "handicap." Neither case was predicated on article 5221k. Rather, they were wrongful discharge cases brought under court-created exceptions to the employment at will doctrine existing for years. The exceptions in these cases do not apply to this case.

Caballero, in his contention that a jury trial was proper in this case also relies on *Jeter v. Associated Rack Corp.,* 607 S.W.2d 272, 277–78 (Tex.Civ.App.—Texarkana 1980), *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981), and *Lopez v. Lopez,* 691 S.W.2d 95, 96–98 (Tex.App.—San Antonio 1985, no writ). Neither case involved article 5221k.

*Jeter* was a suit for both damages and injunctive relief by an employer against former employees, alleging that they were using for their benefit confidential information and documents obtained while employed by Associated Rack Corporation after they left the corporation. The employer alleged that the former employees were engaged in a conspiracy to use such information, and the jury found that the conspiracy had not terminated. It was on that basis that the court determined whether an injunction should be issued. That part of the equitable relief received by the employer was decided by the trial judge, not the jury.

*Lopez* was a divorce case where the wife demanded a jury trial with respect to community property matters and the trial judge refused to permit a jury trial, deciding those matters himself. The case is distinguishable from the case at bar on the facts.

In citing *Jeter* and *Lopez,* Caballero misses the issue. The issue in this case is not whether Caballero may ultimately have the right to trial by jury. Instead, the issue is whether he had the right to trial by jury *at the time of judicial review,* where he elects to proceed under a statute which requires, under sections 7.01(c) and 7.01(g), that certain events occur *before the court* prior to the time that he can go forward with suit for damages, whether before a jury or before the court.

Caballero further contends that TEX. CONST. art. I, § 15 extends to him the "inviolate" right to trial by jury, and having made the jury demand and paid the jury fee, he "established his right to a jury's determination of the disputed fact issues, whether in legal or equitable proceedings."

"Although a litigant has the right to a trial by jury in an equitable action, only ultimate issues of fact are submitted for jury determination. The jury does not determine the expediency, necessity, or propriety of equitable relief." *State v. Texas Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex. 1979). Under the record here presented, it was incumbent on the judge to first determine the expediency, necessity, or propriety of awarding Caballero equitable relief pursuant to sections 7.01(c) and (d) of the Act before submitting any factual issues to the jury for determination. This was not done.

■ Caballero further argues that the use of the word "court" in article 7 of the Act does not "mandate denial of the right to trial by jury," and that the "use of 'court' does not … mean judge alone …"

In determining whether the word "court" in article 7 of the Act relates only to the judge, or to both the judge and jury, it is necessary to examine the entire context of the statute and the manner in which the

word is used. *Welch v. Welch*, 369 S.W.2d 434, 437 (Tex.Civ.App.—Dallas 1963, no writ), and *Ex parte Lowery*, 518 S.W.2d 897, 901 (Tex.Civ.App.—Beaumont 1975, no writ), relied on by Caballero, do not support his position. In *Welch*, a divorce case, the appeal only related to the custody of a minor child. The jury found that custody of the child should be awarded to the mother and the trial court did so. The father appealed on the basis that former article 4639a, which authorized a jury trial in a divorce case with respect to child custody, was unconstitutional. The court of civil appeals held it was not and noted:

> In equity cases there has never been a right to jury trial unless that right has been expressly provided by constitution or statute. The rule in Texas, prior to the amendment under question, was clearly established that in child custody cases the proceedings were considered to be in equity in which the trial judge sat as a chancellor and that if a jury was allowed, its findings were advisory only, and not binding on the trial judge.

369 S.W.2d at 436.

*Ex parte Lowery* did not even involve the right to a jury trial. There, divorce proceedings had initially been filed in the 159th District Court. The judge of the 88th District Court entered the divorce decree and later the wife filed contempt proceedings. The court of civil appeals merely held that the divorce decree could be enforced by contempt actions only in the 159th District Court and not by the judge of the 88th District Court.

It is obvious from the express terms of the statute that it was the intent of the legislature that the word "court," as used in the Act, meant "judge." In the first place, section 7.01(c) provides that "the court may enjoin." In the second place, it provides that, in addition to enjoining, the court may order "such additional equitable relief as may be appropriate." In the third place, the Act expressly specifies what the court must take into account in the case of handicapped employees. In short, we hold that when a statute directs a court to take action in a proceeding and award "eq-uitable relief as may be appropriate," the words "the court" means "the judge" and does not include "the jury."

Concerning Caballero's election to take the amounts of money awarded him by the jury instead of reinstatement, it is stated in his brief:

> The determination of whether to award the amounts found by the jury in response to special issues concerning monetary damages was made by the trial judge in requiring Mr. Caballero, the Appellee, to make his election between reinstatement and monetary payment.

Caballero's election to attempt to collect money damages does not come within the terms of section 7.01(g) about an employer failing to comply with an order of the court. His motion to enter judgment recites:

> By this motion Plaintiff elects to accept the verdict and answers of the jury as the relief accorded to him under the Commission on Human Rights Act of the State of Texas in lieu of reinstatement with back pay.

There are three major problems with plaintiff's purported election. The first is that an election by a party is not "an order of a court issued in a civil action brought under this article," as those terms are used in section 7.01(g) of article 5221k. The second is that loss of future wage-earning capacity is not one of the elements of damages specified in section 7.01(d)(1) of article 5221k. The third problem is that such purported election ignores the dictates of the same section that "interim earnings and unemployment compensation benefits received shall operate to reduce the back pay otherwise allowable."

 CPL contends in its ninth and tenth points of error, respectively, that the trial court reversibly erred in submitting damages with respect to loss of earnings in the past and loss of earning capacity in the future, when such submission was not authorized by law; and the trial court erred in failing to allow credit against the judgment for interim earnings, disability benefits, and compensation benefits received by Caballero. We agree. As above noted, the

jury, in response to Question No. 4, found that Caballero was entitled to $33,000.00 for loss of earnings in the past and $200,000.00 for loss of earning capacity in the future.

The pleadings of Caballero do not make this a suit to recover damages caused by wrongful termination of a contract of employment, where loss of earnings in the past or loss of earning capacity in the future might be recovered. The damage issue, as submitted to the jury, was not predicated on the Act, which authorizes only equitable relief, such as an injunction, hiring or reinstatement with or without back pay, upgrading of employees with or without pay and, at the court's discretion, attorney's fees. Loss of earnings in the past undoubtedly falls within the category of "back pay," as specified in section 7.01(d)(1). However, there is nothing anywhere in the Act that provides for recovery of loss of future earning capacity. As already set out, Caballero bases his case entirely on the Act. Consequently, he is limited to those damages authorized by the Act, and loss of future earning capacity is not one of those elements of damages.

Further, section 7.01(d)(1), specifically provides, in part:

... [I]nterim earnings and unemployment compensation benefits received shall operate to reduce the back pay otherwise allowable.

The evidence is uncontroverted that Caballero was paid $11,500.00 in "interim earnings" by CPL after he quit working because he was still on the payroll. Further, it is uncontroverted that he was making either $650.00 or $1,300.00 a month at the time of trial, which falls within the category of "interim earnings." Additionally, he received $1,400.00 a month for 26 months, or a total of $36,400.00, for not working, which constitutes substantial unemployment compensation benefits. Thus, the trial court was obligated to credit $36,400.00 against the back pay amount of $33,000.00, which eliminates the back pay finding completely.

We sustain CPL's first, second, third, ninth, and tenth points of error. Since we reverse the judgment of the trial court, it is not necessary that we consider its remaining points of error.

The judgment of the trial court is REVERSED and the cause is REMANDED to the trial court for further proceedings in accordance with the provisions of the Commission on Human Rights Act.